## WOOD v. WOOD et al.

No. 5601. Decided June 28, 1935. (49 P. [2d] 416.)

Rehearing denied September 25, 1935.

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for appellants.

*Wm. A. Hilton,* of Salt Lake City, for respondent.

LARSON, District Judge.

This is an appeal from the district court of Salt Lake county, Utah. The record discloses that in October, 1908, James Piediscalzzi, and the defendant Jennie Wood were married in Italy and came to this country, where they assumed and went by the name of James Wood and Jennie Wood. Four children were born to them; namely, Joseph Wood, who is the plaintiff in this action, Mary Wood, Sam Wood, and Josephine Wood. They came to Salt Lake City in 1917, and Mrs. Wood operated a small grocery and lunch counter near the West High School. In 1919 the Woods were divorced; the father getting the custody of the boys and the mother the girls. Mrs. Wood, with the girls, remained in Salt Lake City operating the store, and in 1921 Mr. Wood with the boys settled in Madison, Wis. By January, 1925, Mrs. Wood had accumulated $17,000 part of which was on savings deposit with Walker Bros., Bankers, now the defendant Walker Bank & Trust Company, and the balance was hidden in a china closet in her home. In February, 1925, Mrs. Wood became seriosuly ill and feared she was going to die. She sent word to her former husband, James Wood, at Madison, Wis., to come and bring the boys. The day after their arrival in Salt Lake City she was taken to a hospital. James Wood, the former husband, found the $12,000 hidden in the house and put it in a safety deposit box in the Walker Bank & Trust Company in his name. A

day or two later he talked with Mrs. Jennie Wood at the hospital, and she told him to get the money from the china closet and give it to the children in case she died. In March she was removed from the hospital, still sick. On the way home Mr. Wood took her to the bank and she drew out the $5,000 on deposit and placed it in the deposit box, to prevent difficulty in his getting it from the bank for the children if she died. She was still sick and despairing of recovery. A little later, James Wood, leaving the boys to visit with their mother and taking the daughter Mary with him, took the money from the deposit box without Mrs. Wood's knowledge and returned to Wisconsin, where he deposited $16,000 in a bank in the name of the children by himself as guardian. In April Mrs. Wood, discovering that the money was missing from the box, opened up a $10 savings account in the Walker Bank, in the name of each child by herself as guardian, and went to Wisconsin to get the $17,000 James Wood had taken with him. After some argument, he drew from the bank there the $16,000 and returned it to her. She gave him $2,000 for his own use and returned to Salt Lake City with the $14,000, which she deposited in the four accounts she had opened up in the names of the children by herself as guardian, $4,000 each in the accounts in the names of Joseph, Sam, and Josephine, by herself as guardian, and $2,000 in the account of Mary by herself as guardian. The interest as it accrued was added to the accounts, and sometimes withdrawals were made from each account by her, but the accounts grew steadily. In 1927 she drew out the entire account in the name of Mary Wood and deposited it in a new account in the name of "Jennie Wood." This was after Mary had married against her mother's wishes. In September, 1933, the son, Joseph Wood, became twenty-one years of age, and immediately made demand upon his mother and upon the bank for the money shown in the account in the name of "Joseph Wood, by Jennie Wood, guardian," and, both demands being refused, he commenced this action against his mother, Jennie Wood, and the Walker

Bank & Trust Company, to obtain the money. The cause was tried before the court and a jury, a verdict was returned for the plaintiff, which verdict is general in form, and upon which verdict the court entered a judgment for plaintiff. Defendants assign error and bring the cause here for review.

There are but two questions before us for review: (1) Can a valid gift, inter vivos, be made to a minor with an acceptance of the gift by the minor, and without complete surrender of possession and control by the donor? (2) Is the evidence sufficient to sustain a finding that such gift was made by Jennie Wood to Joseph Wood when the account was opened in the Walker Bank?

It is plaintiff's (respondent's) position that, when Jennie Wood opened the account in Walker Bros.' bank in the name of "Joseph Wood, by Jennie Wood, guardian," that constituted a gift inter vivos, in praesenti, and that the mother was merely a guardian in control of the account for his benefit until he attained his majority, when the control of the guardian ceased by operation of law. Defendant Jennie Wood contends that the money was always hers; that no gift was made; that the account was opened so that, when she died, and upon Joseph attaining his majority, any money remaining in the account would go to Joseph without the formality of probate.

The law with respect to gifts inter vivos was stated by this court in the case of *Holman* v. *Deseret Savings Bank,* 41 Utah 340, 124 P. 765, 766, as follows:

"Gifts inter vivos have no reference to the future, and go into immediate and absolute effect. To constitute such a gift, the donor must be divested of, and the donee invested with, the right of property in the subject matter of the gift. It must be absolute, irrevocable, without any reference to its taking place at some future period. The donor must deliver the property, and part with all present and future dominion over it."

And again in *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638, 643, this court said:

"There are, however, some essentials to a valid gift of a savings deposit account which are recognized by all courts and textwriters. Thus, before any right to a savings deposit account can be said to pass from a donor to a donee, there must be a donative intention. The donor must intend that either the legal or the equitable title to the fund shall pass to the donee. The intention must be that some title to the account shall pass during the life of the donor, otherwise the gift must fail unless the requirements of the law as to testamentary disposition of property have been complied with. It is also uniformly held that a mere intention to make a gift to take effect during the life of the donor is not sufficient to pass any title either legal or equitable. There must be some act performed by the donor which indicates his intention to vest in the donee some right to the property during the life of the donor. The courts are not in accord as to what acts are necessary for a donor to perform in order that his intention shall be given effect."

"Gifts inter vivos have no reference to the future, and go into immediate and absolute effect, and a gift of property to take effect at some future date, or at the death of the donor is void. Such a transaction amounts only to a promise to make a gift in the future, and being without consideration, cannot be enforced." 28 C. J. 647, § 42.

The rule is thus stated in 28 C. J. 624, § 10:

"There is a clearly defined and well recognized difference between a gift inter vivos and a declaration of trust. To constitute a gift inter vivos, the donor must part with the possession and control, and delivery is essential, while in a declaration of trust the legal title may be retained by the donor, or transferred to a third person and only the equitable title vests in the cestui que trust."

Respondent does not seriously dispute these tests, but contends that, when the donee is a minor, there need be no word or act of acceptance, if the gift is beneficial and not burdensome; that the law presumes an acceptance, or, as some courts say, "the law accepts it for them." ■ *McKinnon* v. *First National Bank,* 77 Fla. 777, 82 So. 748, 6 A. L. R. 111; *Copeland* v. *Summers,* 138 Ind. 219, 35 N. E. 514, 37 N. E. 971; *De Levillian* v. *Evans,* 39 Cal.

120. And with this rule of law, that an acceptance of a beneficial gift will be presumed in favor of a minor, we agree; that is, where a minor claims property as a gift, which is beneficial and not burdensome to him, he need not prove an acceptance of the gift by word or deed, prior to his present demand. The law relieves him from the necessity of proving a formal acceptance of the gift, due to his minority, his inexperience, and the limitations on competency to contract freely. If there was a gift, made or tendered or intended, by Jennie Wood in making the deposits in the account involved in this action, it is immaterial whether the record shows an act of acceptance thereof by plaintiff at the time the deposit was made and the account opened. If the gift was made or tendered, the law will presume that it was accepted by the minor.

It is not claimed that the record shows or establishes an outright gift and delivery of possession and control to Joseph Wood of the money or deposit or account by the defendant Jennie Wood. If it did so, this case could not be here. It is contended by respondent (plaintiff) that the record shows that, when Jennie Wood made the deposits in the account in the bank in the name of "Joseph Wood, by Jennie Wood, guardian," she intended it as a gift absolute to him, relinquishing all right thereto or property therein, and reserving only such control as would prevent him from withdrawing the same until he attained his majority. Defendant contends the record shows no intention on the part of Jennie Wood to make a gift of the money, and evidences merely an intent that any moneys she may have in that account at her death could, in the event of her death, be paid by the bank to Joseph Wood, on his attaining his majority. This brings us to the heart of the question: Did Jennie Wood, at the time of opening this account and of making the $4,000 deposit, intend to divest herself of title thereto and vest that title outright in Joseph Wood, or did she merely intend he should have it in the event that she died?

The courts have generally held that a savings account in the name of a third party by the depositor as trustee or in the name of the depositor as trustee for a third party is not sufficient, standing alone, to establish a trust and is insufficient to constitute a gift during the lifetime of the depositor.

"The mere opening of an account by decedent in his name 'in trust for Margaret Specht' is not sufficient, without more, to establish the declaration of a presently effective trust. 'There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended.'" *In re Farrell's Estate*, 110 N. J. Eq. 260, 159 A. 617, 618.

"A mere savings bank deposit made by intestate in her own name as trustee for another, * * * over which deposit intestate exercised complete control during her life, was insufficient to establish a gift of the deposit inter vivos, or to create a trust entitling the alleged beneficiary to the deposit as against intestate's administrator." *Jefferson Trust Co.* v. *Hoboken Trust Co.*, 107 N. J. Eq. 310, 152 A. 374, 376.

"While the courts, in the many cases which have dealt with the intention with respect to gifts and trusts, have refused to lay down any arbitrary, inflexible rule, they substantially agree that something more is necessary with respect to deposits in banks than the mere opening of the account in the name of the depositor in trust for another." *Nicklas* v. *Parker*, 69 N. J. Eq. 743, 61 A. 267, 268.

Where a woman deposits money in a savings bank in her name in trust for her brother and delivers the passbook to the bank, no valid trust in favor of the brother is created and he will not be entitled to deposit on her death as against her administrator. In order to make herself a trustee of the deposit she must do everything that can be done to end her absolute dominion over the deposit. *Mulloy* v. *Charleston Five Cents Savings Bank*, 285 Mass. 101, 188 N. E. 608.

"A mere deposit in the name of another, unaccompanied by acts or declarations indicating an intention to donate the fund, is not alone sufficient to prove a gift." *Preston* v. *Preston's Administratrix*, 245 Ky. 552, 53 S. W. (2d) 957, 961. See, also, *Robertson* v. *Parker*, 287 Mass. 351, 191 N. E. 645.

It thus seems that the form of the account, standing alone, by the great weight of authority is not sufficient to show an intention to create a trust or prove a gift of the money. Other corroborative evidence is essential. No cases have been cited, and we have found none, where a gift of a bank account, or a trust therein, has been determined by the courts while the claimed donor was still living. Such cases all seem to have arisen after the death of the depositor, in order to settle ownership as between the claimant of the gift or trust on the one hand and the estate of deceased, or the bank, on the other hand. In none of the reported cases, as far as we have been able to find, was it possible to have the direct testimony of the claimed donor or trustee as to the transaction and the intent in making the deposit. As stated by Mr. Justice Thurman in *Olsen* v. *Scott,* 61 Utah 42, 210 P. 987, 991:

"In this class of cases, more perhaps than in any other, it is uniformly held that each case must be determined upon its own facts, and it is very seldom that two cases are found analogous in every material respect. As before stated, the controlling question is: What was the intention of the alleged donor? If this can be determined from the evidence, the form of the transaction is immaterial."

We have carefully examined the transcript and testimony of all the witnesses. The plaintiff's case rests upon the testimony of himself and Sam Wood and Mr. and Mrs. Hullivan. Plaintiff testified that he first heard of this money when he came out here from Wisconsin in 1925 when his mother was sick; that he heard his father and his mother talking about the money and saying it was for the "kids" when they were twenty-one. This was before the money was taken to Wisconsin and before the accounts were opened at the bank. He testified:

"After my mother brought it back here, why she put it in the bank. She went and got it and told us it was for us kids."

No further detail of the conversation appears. He was then asked by his counsel, "Were you permitted to see the

passbook and have it in your possession at home?" and he answered, "I was permitted to see it." "Mother said it was mine when I was twenty-one years old." That is all his testimony as far as pertinent here. Sam Wood testified that his mother had the passbooks; that twice she let him take them to the bank to have the interest entered, and once she said, "When you become of age you are well taken care of." That is the only statement of the conversation in the records. Nothing to show what was talked or how it came up. Sam further testified that on one occasion, with his mother's permission, he showed the passbook to a Mrs. Hullivan, and his mother remarked, "My boys are well taken care of when they become of age." That is all of his testimony. Mrs. Hullivan testified that in April, 1929, Sam Wood was staying with her; that she and her husband went with Sam to see his mother, and while there Sam said, "Now, Mrs. Hullivan, I want to let you know that I haven't storied to you about this money. When we become of age we get this money and there is four thousand dollars for me when I become of age." Twenty-one, he mentioned. And he turned around to his mother, and she said, "Yes, not now but when he is twenty-one." That is all his testimony. It was stipulated that Mr. Hullivan would testify as his wife had done. That is all the testimony for plaintiff except the father, James Wood, whose testimony we do not consider of any significance on this question.

For the defendants, Jennie Wood testified in her own behalf. Three or four days after she went to the hospital she testified she said to James Wood, her former husband:

"I tell him that I die. I tell Mary, 'You give the key to your daddy, and go to the china set, and take this money and put it in the box, in case me die, and give it in twenty-one years to the kids."

In this she is corroborated by the daughter Mary. There was $12,000 in the china closet and $5,000 in savings account in Walker bank. James Wood told her to take money out of the bank because in case she died he would have

trouble getting the money out of the bank. He tried to sign her name to get the money out of the bank, but the bank would not let him. The day she got out of the hospital he took her to the bank, had her withdraw the $5,000 and put it in the deposit box. Before she went to Wisconsin she opened up the accounts involved here, one $10 account in savings in the name of each child, "By Jennie Wood, guardian." She testified:

"Q. When you put that ten dollars in the bank for each of the kids what did you tell Mr. Kelly? A. I tell Mr. Kelly this check, you give my kids in case I die. Mr. Kelly says, what do you say, Mrs. Wood? You got bank book already started. I says, well, you put it down each bank book this fourteen thousand dollar check. In case I die you give it to my kids at twenty-one years of age.

"Q. If I understand you, then, when you put the ten dollars in each bank book you said to Mr. Kelly, I want the bank to give this money to my children after I die—A. In case I die.

"Q. In case I die— A. Yes, sir.

"Q. And when they reach twenty-one years of age? A. Yes, sir.

"Q. You were still sick at that time? A. Yes, sir; I am pretty sick."

Then, referring to the deposit of the $14,000 in the accounts after she returned from Wisconsin, she took it to Mr. Kelly and told him, "Mr. Kelly, you put this $14,000 in four bank books and give it to my kids in case me die"; that she never said they could have the money, except in the event of her death, and then only upon becoming twenty-one years of age; that when she made both the $10 deposit and the $4,000 deposit she did not intend to give it to the children then; that business was not as good as it used to be; that these deposits represented all the money she had; that she did not want to go on the street, and intended the children should have the money only after her death. She further, testified that she told Kelly, the cashier, when the money was deposited; "I told him this money I give my kids in case me die, but I should still control my money." During all these periods, she was sickly and feared she was about to die.

J. J. Kelly, the cashier, who received the deposits, entered the accounts, and did all the talking at the bank for Mrs. Wood, testified that in March or April, 1925, Mr. and Mrs. Wood came from the Holy Cross Hospital, in a taxi, to the bank; that she looked very sick; and that Mrs. Wood said, "I scarcely think I can pull through. I think I am going to die. I have five thousand and some odd dollars in this bank. I want to turn this over to the father so that if anything does happen he will have the money to take care of these children, until they reach twenty-one years of age, at which time he will turn over any funds that may be left"; that if she got well he was to return the money; that it was hers in case she recovered. He further testified that the account was opened in the names of the children by her as guardian to insure distribution of the money to the children in case she died; that she said she wanted control over the money and the right to withdraw it at her pleasure; that it was her money, but she wanted it so the bank could pay it to the children if she died; that she was afraid she would not be able to live long; that the form of the account was on his suggestion, he considering, and telling her, by so making the account it would still be her money, but, if. she died, the bank could pay it to the children.

Mary Wood Leishman and Josephine Wood Drayseth, the two daughters of Jennie Wood, testified that their mother always had declared that the money was hers, but she had put it in the bank in the names of the four children by herself as guardian so the bank could give it to them if she died. This is all the evidence in regard to the deposits.

At the close of the evidence, defendants moved the court to direct a verdict for the defendants on four grounds, as follows: (1) That the evidence conclusively shows that the defendant Jennie Wood had no intention of making a present irrevocable gift to the plaintiff; (2) that the defendant did not execute any such proposed intention by making a delivery, either of the subject matter or any symbol of title thereto; (3) that the evidence shows on the contrary a fixed

intention on the part of the donor to maintain control of the subject-matter of the supposed gift throughout her lifetime; (4) that the evidence does not disclose the creation of a trust by the defendant, Jennie Wood, but, on the contrary, discloses an intention to maintain ownership of the fund in question.

The motion was denied, and the ruling is among the assignments of error. We are clearly of the opinion that the trial court erred in denying this motion and submitting the cause to the jury. We are naturally hesitant about setting aside the verdict of a jury, especially where it seems to have the approval of the trial court, but where, as here, there is no substantial evidence to sustain the verdict, our course of conduct is clear. Be it said that throughout the trial there was considerable discussion and argument as to whether the action was on the theory of a gift inter vivos or on the theory of trust. At the close of plaintiff's case, when defendants moved for a nonsuit, and after discussions which do not appear in the record, plaintiff amended his complaint in two particulars, and thereafter the action seems to have proceeded upon the theory of a trust created rather than an outright gift. The court instructed the jury that the question was whether she had "intended to make an irrevocable trust" and that "if she put that money in the account as a trust" for the children, and speaks of the "conditions of the trust."

It seems, therefore, that the trial court submitted the case on the theory that it was a trust set up in the bank rather than a claim of a gift inter vivos. Instruction No. 3 as given to the jury by the court was as follows:

"Now, gentlemen, the issue in this case is very simple. I do not state that the evidence, on which unquestionably there is a contradiction, is itself so simple, but the issue which you must finally decide is a very simple one.

"The issue is simply this: When Jennie Wood established the savings deposit account in the name of her son, Joe Wood, by herself as guardian, did she intend to make that as an irrevocable trust to re-

main there and to accrue interest, and when he arrived at the age of twenty-one that he was to get it at all events, whether she was living or dead, or, did she intend to put that money in the account, savings bank account in a trust that if she was dead at the time he arrived at the age of twenty-one he was to have the money, but not until he was twenty-one, and as one of the conditions of the trust that she might withdraw it at any time before her death? That is the sole question, what she really intended when she put that money in that account and opened up and established that account."

The complaint does not state a cause of action as for a trust, and respondent frankly and vigorously asserts, both in his brief and upon oral argument, that he does not claim anything as a trust, that his claim is based solely upon the theory of a gift inter vivos to a minor, and the judgment must stand upon that theory and no other. In view, therefore, that the trust elements were injected into the case to the jury, and the verdict is not founded upon a straight submission to the jury as to whether a gift inter vivos had been made, we have less hesitancy in disregarding the verdict of the jury.

On the record we can only conclude that Jennie Wood, when she made the deposit with Walker Bros., Bankers, did not intend a present gift of the money or account to Joseph Wood. This was all the money she had, she was getting older, her health was broken, and it is not consistent with the record that she would thus give away all she owned, deprive herself of all means of livelihood, and, as she expressed it, "go on the street" with $14,000 of her earnings from years of toil lying in the bank—a gift which she could not reach, however dire may be her need, and which the children could not reach for seven to twelve years to come. It is not a natural behavior of people under such circumstances, and therefore not a natural conclusion or deduction, that she intended to so deprive herself of all she owned. Since such conclusion is not the natural or most reasonable course of conduct for people under such circumstances, to be upheld it must be shown by the preponderance of satisfactory evidence. The facts surrounding the deposit, Jennie

Wood's years of toil and saving to accumulate this money, her sudden break in health and serious illness, her fear she would die, her retrieving of the money from Mr. Wood, where he had sought to make it so the children could get it before her death, the fact that it was all the property she owned, that it was not deposited outright to the children, that she made withdrawals from all accounts, that she kept the passbook, and had actual control of the money and account, and drew out all of Mary's account, all point forcibly to the oft-repeated doctrine of Mrs. Wood that the money was only to go to the children "in case me die." Her testimony is corroborated in every detail as to the terms and conditions of the deposit and the intention under which it was made.

There having been no actual or symbolical delivery, either to the respondent or to any one for him or as trustee, and the record being preponderantly in favor of the view that Jennie Wood in making the deposit did not intend to make a gift thereof to Joseph Wood, the judgment must be reversed and the cause remanded to the district court of Salt Lake county, with directions to enter a judgment for the defendants. Such is the order. Costs to appellants.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, J., being disqualified did not participate herein.