JACKSON v. JAMES.

No. 6075.   Decided April 10, 1939.   (89 P. 2d 235.)

Rehearing denied June 1, 1939.

*L. E. Nelson,* of Logan, for appellant.

*Leon Fonnesbeck,* of Logan, for respondent.

LARSON, Justice.

This is an appeal from the District Court of Cache County. Plaintiff's complaint sets forth two causes of action. The first is for the sum of $187.50 paid by plaintiff as funeral expenses of defendant's intestate; and the second, in claim and delivery for possession of a Dodge coupe. Defendant joined issue. A jury found for defendant on the first cause of action, and for plaintiff on the second cause. Both appeal. T. F. Jackson, hereinafter referred to as decedent, on June 27, 1936, obtained an interlocutory decree of divorce, and on December 7, 1936, some 20 days before the decree became final, entered into a marriage contract at Preston, Idaho, with plaintiff. In January, 1937, decedent bought a new Dodge coupe which was registered in his name as legal owner. For some years decedent had been a member of the Carpenters' Union, and upon his death his wife was entitled to receive from the Union the sum of $300 known as a funeral donation. After the marriage contract with plaintiff decedent had the Union make this donation payable to plaintiff. He died in December, 1937. The Union paid the $300 to plaintiff and from it she paid the funeral expenses of decedent in the sum of $187.50. Decedent's children by the former marriage then raised the question that the marriage to plaintiff was illegal and defendant, James, was appointed administrator. This action followed. Plaintiff contends that since she was not the wife of decedent she was under no obligation to pay the funeral expenses, and having paid the same for the benefit of the estate she is entitled to recover back the amount so paid. As to the other cause of action she claims that immediately after the purchase of the coupe decedent gave it to her as a wedding present. The pertinent question as to each cause of action is: Does the evidence sustain plaintiff's contentions?

We shall first consider the record as to defendant's appeal on the second cause of action. Two points are argued: (a) That the evidence does not sustain the verdict of the jury; (b) that regardless of the evidence since the transfer

of title had not been made in the manner provided in Sections 62 and 71 of Chapter 46, Laws of Utah 1935, the gift if made was void in law. We note them in order.

No useful purpose could be served by entering into a dissertation on the law governing gifts inter vivos since no such question is directly presented on this appeal. Discussion of all questions which could arise in this cause can be found in the following cases: *Holman* v. *Deseret Savings Bank,* 41 Utah 340, 124 P. 765; *Wood* v. *Wood,* 87 Utah 394, 49 P. 2d 416; *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638; *Robinson* v. *Mut. Sav. Bank,* 7 Cal. App. 642, 95 P. 533; *Harmon et al.* v. *Kerns,* 169 Okl. 290, 36 P. 2d 898; *Waite* v. *Grubbe,* 43 Or. 406, 73 P. 206, 99 Am. St. Rep. 764; *Thomas* v. *Thomas,* 70 Colo. 29, 197 P. 243; *Wooley* v. *Taylor,* 45 Utah 227, 144 P. 1094; *Chambers* v. *McCreery et al.,* 4 Cir., 106 F. 364; *In re Calen's Estate,* 142 Misc. 363, 255 N. Y. S. 383; *Lynch* v. *Lynch,* 124 Cal. App. 454, 12 P. 2d 741; *Gannon* v. *McGuire,* 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694; *Wiley Allen Co.* v. *Edwards,* 29 Cal. App. 184, 154 P. 1066; *Peirce* v. *Giles,* 93 Ill. App. 524; *Robinson* v. *Hoalton,* 213 Cal. 370, 2 P. 2d 344. This being an action at law and the jury having found the facts, we can not disturb the verdict if there is evidence from which the jury as reasonable men could so have found. We have carefully read the record and must conclude that there is competent evidence to sustain the verdict of the jury for the delivery of the car to the plaintiff, and this point is resolved against appellant.

But, argues appellant, even though the evidence shows a gift of the car to plaintiff yet the gift is void in law because the ownership registration was not transferred in the office of the State Tax Commission. In support of this position they cite Section 71 of Chapter 46, Laws of Utah 1935, and the case of *Swartz* v. *White,* 80 Utah 150, 13 P. 2d 643. Appellant however misconceives both the effect of the statute and the import of the decision. The statute cited reads:

### Section 71:

"Until the department shall have issued such new certificate of registration and certificate of ownership, delivery of any vehicle required to be registered shall be deemed not to have been made and title thereto shall be deemed not to have passed, and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose except as provided in section 76 of this act."

Be it noted that the section does not apply to all vehicles but only to those *required to be registered.* By Section 19, before a motor vehicle can be driven on a public highway it must be registered. By Section 61, the transfer or assignment of title to a car automatically terminates the registration. Section 63 provides that the transferee of title to a car, *before operating such vehicle on a highway* shall secure a new registration of title, thus recognizing that he gets the title without transfer of registration. Section 66 further supports this view and Section 67 contains this significant provision:

### Section 67:

"Upon any such transfer a new owner may either secure a new registration and certificate of title on proper application, *upon presentation of such instruments or documents of authority or certified copies thereof as may be sufficient or required by law to evidence or effect a transfer of title or interest in or to chattels* in such case, or such new owner, upon transferring his title or interest to another person shall execute and acknowledge an assignment and warranty of title and deliver the same, also the documents of authority or certified copies thereof as may be sufficient or required by law to evidence the right of such person, to the person to whom such transfer is made." (Italics added.)

Section 69 provides for transfer of registration in certain cases by affidavit. It seems therefore that Section 71 is not to be construed, as contended by appellant, as absolute and mandatory to pass a title. In the light of the whole chapter it is evident that its provisions were written to protect innocent purchasers and third parties ■ from fraud but was not intended to be controlling as between the parties to the transaction. It may well be

doubted that the legislature could make mandatory any such formalities as a prerequisite to transfer of title as between the parties. It can of course prescribe such rules to be effective as to third parties and it may perhaps provide that the registered title shall be an element in determining liability for damages resulting from the operation of the car, as indicated by Section 76.

Let us now devote a few minutes to a more particular analysis of Section 71, the section upon which appellant relies. It will be noted from the italicized portions of the section, quoted supra, that the title *shall be deemed not to have passed* and the transfer *shall be deemed* to be incomplete. These provisions are not absolute, mandatory, or controlling in their application. They do not confer or deny substantive rights. They are procedural or evidentiary in nature. They provide a flag of warning to prospective transferees or encumbrancers, much as do the registry acts relative to real estate or chattel mortgages. Such was the effect given the statute in *Swartz* v. *White,* 80 Utah 150, 13 P. 2d 643.

A consideration of the statute shows it is not to be construed as attempted by appellant, and this point is likewise resolved in favor of the verdict and judgment. In this connection appellant argues that the court erred in permitting plaintiff to testify, contending she was barred by the provisions of Section 104-49-2, Revised Statutes of Utah 1933. Plaintiff did not testify as to any transactions had with decedent or as to any conversations with him, and there was consequently no error in permitting her to testify as a witness.

We come now to a consideration of the plaintiff's cross-appeal as to the first cause of action. A number of technical objections are raised by appellant as to whether there are any assignments of error for consideration on this phase of the appeal. But it is unnecessary to consider those questions. The case was tried to a jury which returned its verdict May 16, 1938, and judgment on the

verdict was entered May 17, 1938. On August 23, 1939, notice of cross-appeal was filed. The record discloses that no motion for a new trial as to this cause of action was ever made in the court below. Under the provisions of Section 104-41-5, Revised Statutes of Utah 1933, in all cases tried by a jury a motion for a new trial must precede an appeal to this court in an effort to review the sufficiency or effect of the evidence. No such motion having been made in the court below, and the only attempted assignments of error going to such questions, the matter is not properly before us for review, and the verdict and judgment on the first cause of action should be affirmed.

Finding no prejudicial error in the record, the judgment appealed from is affirmed as to both causes of action. Costs to respondent as to the appeal by appellant on the second cause of action. Appellant is however awarded his costs incurred in defending against respondent's cross-appeal on the first cause of action, being his costs for eight pages of the appellant's reply brief.

MOFFAT, C. J., and McDONOUGH and PRATT, JJ., concur.

WOLFE, Justice (dissenting).

The prevailing opinion presents a tenable position, but in view of the language of our act and the purposes thereof, I cannot agree that it correctly states the law in this jurisdiction.

Section 71 of the act states in specific language:

"Until the department shall have issued such new certificate * * * delivery * * * shall be deemed not to have been made."

I cannot conceive of language which can be much more unequivocal. The prevailing opinion states that the word "deemed" is not as positive as the language could be made. I think the word was deliberately chosen because the legislature could not say that an actual physical delivery really

made was not made. Consequently, it had to recognize that a manual physical delivery, evidence of which there is in this case, could have been made. Such delivery was, however, not in law to be "deemed" or "considered" or "recognized" or "regarded" or "thought of" or "supposed" or "judged" to have been made. All the above words are synonyms given in the definition of the word "deemed" as contained in the Second Edition of Webster's New International Dictionary. I do not think the word "deemed" can be read "presumed," which presumption can be overturned by evidence.

To proceed with the wording of Section 71, it further states that the "title thereto shall be deemed not to have passed, and *said intended transfer* shall be deemed to be *incomplete* and not to be *valid or effective for any purpose."* (Italics added.) Here again I cannot conceive of words much more unequivocal. When the statute says the transfer shall not be deemed effective for any purpose, how can we say it shall be effective or be deemed effective for the purposes of transfer of title between the intended transferor and intended transferee, but not as to third persons? This seems to be not construction of a statute but judicial legislation.

There are certain sections which impliedly recognize a transfer of title even though the requirements of Section 71 have not been complied with. Section 71 does not preclude an intended transfer or an effort to transfer. It recognizes that such may be attempted to be made and yet the transfer be not complete and therefore invalid until the new certificate of registration and ownership issues. A person may indeed by such intended transfer obtain a possessory right or an interest on which to bring replevin against one with no interest or right,—Sections 63-66 speak of the "transferee" as the purchaser or the person to whom it is intended to make a transfer even though the transfer is not yet completed by complying with the requirements of Section 71,—but such words must be read in the light of the

whole context in which case "transferee" is seen to mean "intended" or "purported" transferee. Section 67 cited in the court's opinion deals with the case of transfer by operation of law provided for by Section 66. Where the transfer was by sheriff's sale or involuntary, other means for supplying the indicia of title and obtaining a new certificate of registration and ownership from the Motor Vehicle Department had to be provided for. Such cases present specific statutory exceptions from the general mode of transferring title set out in Section 71.

The scheme of Article 4 dealing with transfers of Title or Interest clearly shows that transfer of title is synonymous with transfer of registration. *"Until* the department *shall have issued such new certificate,"* delivery shall not in law be deemed to have been made, nor title to have passed. (Italics added.)

As to the purposes of requiring passage of title to march with transfer of registration and transfer of certificate of ownership. The act undoubtedly meant to preserve a public record so that persons buying or advancing money on cars might know that they were dealing with the owner. Hence, recordation prevails over possession. In real estate a buyer has notice of the claims of one in possession despite the record. But possession of a car is too unstable a mark of interest since any driver may possess it temporarily and sufficiently to defraud. Consequently, the one dealing with another in whose name the car is recorded has precedence of him who has possession even though the possession were were manually delivered in pursuance of a sale unless of course the person dealing with the registered party has actual or constructive notice that another is the owner or has an interest in the car.

But the registration is in addition for a broader purpose. It was to permit tracing of stolen cars; to check traffic violations, and in some states where the car owner was made responsible for certain delicts of the driver, to ascertain by

inspection of the record such owner. *Bunch* v. *Kin*, 2 Cal. App. 2d 81, 37 P. 2d 744; *Briedwell* v. *Henderson*, 99 Or. 506, 195 P. 575; *Parke* v. *Franciscus*, 194 Cal. 284, 228 P. 435. While the statutes in the various states differ greatly— some pronouncing an attempted transfer without fulfillment of the conventions void, others denouncing a sale or transfer unaccompanied by such conventions as unlawful— the purpose is the same, i. e., to coerce the transferor and transferee to accomplish the registration. The policy of this state in requiring correct registration was touched on in *State* v. *Bland*, 93 Utah 384, 73 P. 2d 964.

As to the reasoning: In the instant case the supposed wife founds her case on a gift inter vivos. This requires a delivery. But Section 71 provides that a delivery shall not be deemed to have been made unless a new certificate of registration and ownership issues to the new intended owner. One ingredient of delivery in transfering title of automobiles by delivery not required in passing title to ordinary chattels is the issuance of the new certificate of registration and ownership. Said the legislature in effect: "Even though you make manual delivery in execution of your intention to pass title, such delivery shall not be deemed in law a delivery." If, therefore, Mrs. Jackson's title depends on delivery and there has in law been no delivery, where is there a completed gift inter vivos? Two people may play that one of them has title and no one can object. If Mr. Jackson wanted to make his bride feel the thrill of ownership by treating in language the car as hers, he could not be prevented by law from so doing, but when by design or ignorance he failed to complete the transfer as required by law, he did not in law transfer title nor deliver. This is not one of those cases where one is estopped to deny the right of another in possession when the one in possession has bought the car. This is a gift where no estoppel is pleadable. Moreover, the administrator is not only the personal representative of Mr. Jackson, the deceased, but represents creditors. Creditors of the deceased can attach the car as against a per-

son claiming under an incompleted gift. See cases hereunder.

As to the cases: The case of *Swartz* v. *White*, 80 Utah 150, 13 P. 2d 643, 646, cited in the court's opinion, appears to support the view herein expressed. In that case it was stated:

"Under the provisions of this act, before one could regard Stewart as the owner of the car the transfer to him should have been completed by the issuance of a new certificate of registration and certificate of ownership in his name by the secretary of state."

But the facts of the Swartz case were so different from those of the case at bar that I doubt if the prevailing opinion or this opinion may comfortably rest upon it.

I call attention to six notes in American Law Reports, as follows: 16 A. L. R. 1108; 35 A. L. R. 62; 37 A. L. R. 1465; 52 A. L. R. 701; 63 A. L. R. 688; and 94 A. L. R. 948. These notes entitled "Civil rights and liabilities as affected by failure to comply with the statute upon sale of an automobile" demonstrate how varied are the statutes in the various states and how varied even are the rulings under any one statute.

Only those authorities in states having substantially the same statute as we have will be found helpful, and then only if the facts in each case are carefully considered, for in very few fields of the law is the adage that "circumstances alter cases" more applicable. It is very difficult, in the first place, to find any case where the litigation involved just the parties to a transaction, and we have found no case where it involved only the parties to an alleged gift. In fact, such is not so in the instant case. One of the parties to the transaction is dead.

In practically all of the decided cases a third party is involved, but in different respects. Certainly where a third party is involved who has in good faith relied on and changed his position because of the registration record we have a plain case of applying the statute to protect such

person. And in cases where the seller parts with possession and receives value for his car, and he or some party with knowledge sues, the courts invoke the principle of estoppel to protect the buyer.

*In re Estate of Wroth,* 125 Neb. 832, 252 N. W. 322, it was definitely held that the plaintiff Emma Jensen could not claim a gift from LeRoy C. Wroth. The only evidence consisted of oral statements claimed to have been made by Mr. Wroth in the presence of Miss Williams and Mr. Lindsay almost identical to those testified to in the case at bar. There was no evidence of any bill of sale or transfer in the manner required by the Statutes.

Section 60-325, Comp. St. Neb. 1929, specified:

"Provided, upon the transfer of ownership of any motor vehicle the title shall not pass until the certificate of registration properly executed, shall be filed in the Department of Public Works as required in this article."

The court held that a directed verdict for defendant, the administrator, was proper. The language of the Nebraska statute that "title shall not pass" and the language of our statute that title shall not be deemed to have passed mean the same thing. If in law something shall be deemed not to have occurred, it is in law equivalent to its not having occurred.

In Oregon the law, Laws 1919, p. 713, § 9, states that "no sale or transfer of any motor vehicle registered under this act shall be valid without compliance with the provisions of this section." In *Briedwell* v. *Henderson,* 99 Or. 506, 195 P. 575, 576, 577 the court said in regard to the above language:

"These words are clear, plain, unambiguous, and manifestly mean what they say, and not something else. This provision of the statute is not open to construction. It interprets itself."

In *Swank* v. *Moisan,* 85 Or. 662, 669, 166 P. 962, 964, it was held that a vendor whose sale was invalid for failure

to comply with the act could replevin the car, the sale becoming invalid for failure to report the sale within ten days. He could not recover on the note given for the purchase as the defendant could defeat the same by showing a breach of warranty to convey title. The plaintiff, title owner, was therefore permitted to recover his car on the theory that he still owned it although possession had been transferred to defendant, there being no ground for estoppel.

In *Ohio Farmers' Insurance Co.* v. *Todino,* 111 Ohio St. 274, 145 N. E. 25, 38 A. L. R. 1118, it was held that an owner who had not complied with provisions of the act was not a sole and unconditional owner who could recover under the terms of an insurance policy requiring him to be such in order to recover. The title could not pass without the verified bill of sale, hence the donee at the time of the theft was not sole and unconditional owner within the meaning of the policy.

I think our general statute on chattel mortgages, R. S. Utah, 1933, 13-0-1, may throw some light on the case. It provides, "unless the possession of personal property is delivered to and retained by the mortgagee, no mortgage thereof shall be valid as against the rights and interests of any person *other than the parties thereto,* unless" (then follow the provisions which make the mortgage valid as to third persons). (Italics added). If this statute is compared to the one respecting the requirements for passing title to automobiles, it becomes more clear that the latter statute was meant to do more than protect persons who engaged in transactions respecting the automobile. It was a coercive police measure applying to all persons—those who directly dealt with the car and those who based their claims on the assertion of title in one or the other of those primary parties to the transaction.

The only state I have been able to find having a statute just like ours is California prior to an amendment in 1935. Sec. 45(e) of Motor Vehicles, California General Laws,

now Sec. 186 of Vehicle Code, St. 1935, p. 118. Section 45 (e) before amendment, St. 1929, p. 514, provided:

> "Until said division shall have issued said new certificate of registration and certificate of ownership as hereinbefore in subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

The precise question raised in the instant case has not been decided in California, but under the following cases the California courts have discussed the principles which should govern here: *Boles* v. *Stiles*, 188 Cal. 304, 204 P. 848; *Crandall* v. *Shay*, 61 Cal. App. 56, 214 P. 450; *General Motors Acceptance Corporation* v. *Dallas*, 198 Cal. 365, 245 P. 184; *Maryland Casualty Co.* v. *Hollman*, 100 Cal. App. 669, 280 P. 1034; *Samuels* v. *Barnet*, 79 Cal. App. 529, 250 P. 405; *Dowd* v. *Russell*, 78 Cal. App. 262, 248 P. 293; *Honnold* v. *Pacific Finance Corp.*, 105 Cal. App. 152, 286 P. 1101; *Bunch* v. *Kin*, 2 Cal. App. 2d 81, 37 P. 2d 744; *Parke* v. *Franciscus*, 194 Cal. 284, 228 P. 435; *San Joaquin Valley Securities Co.* v. *Prather*, 123 Cal. App. 378, 11 P. 2d 45; *DePuy* v. *Shay*, 127 Cal. App. 476, 16 P. 2d 158; *Chelhar* v. *Acme Garage*, 18 Cal. App. Supp. 2d 775, 61 P. 2d 1232. In most of the cases the third parties were not innocent parties who had relied on the record to their prejudice but stood in the shoes of the parties to the transfer, being creditors or assignees. Thus, a wife claimed against the attaching creditor of her husband, the registered owner, in DePuy v. Shay; a creditor of the registered owner-mortgagor sued the mortgagee in Chalhar v. Acme Garage; Boles v. Stiles and San Joaquin Valley Sec. Co. v. Prather were between purchaser and seller; a creditor of the purchaser sued the seller in possession in Crandall v. Shay; the creditor of the seller proceeded against the purchaser in General Motors A. Corp. v. Dallas, Maryland Casualty Co. v. Hollman and Samuels v. Barnet; in Dowd v. Russell and Parke

v. Franciscus the contest was between the purchaser and the seller's assignee; and in Honnold v. Pacific Finance Corp. the buyer's assignee brought claim and delivery against the seller's assignee.

In each one of these cases the prevailing party was, or stood in the position of, either the registered owner or the party rightly in possession of the automobile. In only three cases was the judgment against the registered owner or the one standing in his shoes; Maryland Casualty Co. v. Hollman, Dowd v. Russell, and Boles v. Stiles. In the first case a creditor of the registered owner brought conversion against the purchaser in possession and was denied recovery because the registration had been procured by fraud and the court emphasized the facts that defendant had possession and was the equitable owner. In Dowd v. Russell, a purchaser with possession was allowed to keep the car in an action by a subsequent purchaser from the same seller who bought knowing of the prior sale and procured a certificate of registration fraudulently. Boles v. Stiles was replevin by the transferee in possession against the transferor who had taken the car and who was the registered owner; the court held the latter estopped to assert ownership.

The case most akin to the case at bar is DePuy v. Shay. There a husband's creditor attached a car registered in such husband's name. The wife brought conversion against the sheriff and the creditor, alleging that she paid for the car and was the equitable owner. The court denied her claim since she had neither title nor the right to possession. Transfers between husband and wife, observed the court, should be carefully scrutinized; and the facts that the husband drove the car and attended to it, coupled with his registered ownership, moved the court to deny the wife's claim. The case is authority for the instant case.

The sweeping interpretation placed on this section by the California courts was thus stated in *Samuels* v. *Barnet,* supra, where an assignee of a bill of sale with only constructive possession of the car was denied recovery against

the judgment creditor of the seller and registered owner [79 Cal. App. 529, 250 P. 406]:

"The case is a simple one. The appellant bases his right of action on a purported transfer of a second hand automobile, wherein he failed to meet the requirements of the statute. The section quoted provides that, unless these restrictions are followed, the 'intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose.' The Legislature could scarcely have used words which would have been more expressive of the intention to declare that such transfers should not be effective for any purpose. Such being the case, the transfer could not be effective for the purpose of conferring upon appellant the right of possession necessary for the maintenance of this action."

The language of the statute, the reasoning under it, the case of *Swartz* v. *White*, supra, and the California cases, under an almost identical statute which was undoubtedly the pattern of our act when enacted in 1925, Laws 1925, c. 125, and the cases under comparable statutes in other states, impel me to dissent from the opinion of the court.