ALLSTATE INSURANCE COMPANY, Plaintiff and Appellant,

v.

LIBERTY MUTUAL INSURANCE GROUP, and Travelers Insurance Company, Defendants and Appellees.

No. 920646–CA.

Court of Appeals of Utah.

Jan. 18, 1994.

---

L. Rich Humpherys, Lee C. Henning (Argued), Mark L. Anderson, Christensen, Jensen & Powell, P.C., Salt Lake City, for plaintiff and appellant.

Royal I. Hansen, Jeffrey Robinson (Argued), Moyle & Draper, P.C., Salt Lake City, for defendants and appellees.

Before BILLINGS, GREENWOOD and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Allstate Insurance Company (Allstate) appeals the trial court's order of summary judgment in favor of Liberty Mutual Insurance Group (Liberty Mutual) and denial of Allstate's Cross–Motion for Summary Judgment. By so ruling, the trial court held that Allstate is solely liable for insurance coverage in this case. We affirm.

## BACKGROUND

The parties stipulated to the following facts. Wheels, Inc. (Wheels), insured by Allstate, leases automobiles to various businesses. Wheels retains title to the leased vehicles throughout the entire lease period. Jockey International, Inc. (Jockey) is one of Wheels's customers. Under the terms of the lease agreement between Wheels and Jockey, Jockey received possession and control of the vehicles, along with a corresponding duty to provide liability insurance on the leased vehicles during the term of the lease. To fulfill this obligation, Jockey contracted for insurance coverage with Liberty Mutual.

Jack Habish was a salesman for Jockey from approximately 1963 to 1986. In October 1981, Wheels leased a Buick automobile to Jockey, which assigned it to Habish. Around February 1985, Jockey informed Habish that it was planning to replace the Buick with a new leased vehicle, a Mercury Marquis. Pursuant to a practice in place since 1971, upon termination of a particular lease and delivery of a new vehicle, the Jockey employee who had used the old vehicle could then purchase it from Wheels. Habish elected to exercise this option and notified Jockey that he wanted to purchase the Buick for his own personal use.

On March 11, 1985, Wheels delivered the new Mercury Marquis to Habish. He retained the Buick for his own use and did not use it for business purposes after March 11, 1985. On March 23, 1985, Habish tendered the agreed upon sales price to Wheels for the used Buick. Wheels accepted the payment and began processing the paperwork that would officially transfer title to Habish. Habish obtained an oral binder of insurance coverage on the Buick from Allstate on March 28, 1985. On April 4, 1985, after Habish had tendered payment for the vehicle, but before legal title had been formally transferred into his name, Habish's daughter was involved in an automobile accident. She was driving the Buick with Habish's permission. The other driver involved in the accident was seriously hurt and sued Habish for her injuries. Allstate, as the named insurer of the Buick, settled for the policy limit of $100,000.

Allstate subsequently brought suit against Liberty Mutual, asserting that its insured, Jockey, had a duty to insure the Buick on the date of the accident under the terms of the lease agreement and therefore Liberty Mutual was liable for part or all of the $100,000

settlement amount paid by Allstate to the injured driver of the other car. Liberty Mutual moved for summary judgment and Allstate filed a cross-motion for summary judgment.

The trial court issued a memorandum decision supporting its order of summary judgment in favor of Liberty Mutual and denial of Allstate's Cross–Motion for Summary Judgment. It ruled that the lease between Wheels and Jockey terminated on the date that Jockey surrendered the Buick to Habish, not on the date that title transferred from Wheels to Habish, and therefore Allstate was solely responsible to pay the injured driver.

## ISSUE ON APPEAL

The issue on appeal is whether the trial court erred in determining that on April 4, 1985, Allstate was the sole insurer of the Buick because the lease agreement between Wheels and Jockey had terminated in March when Jockey relinquished possession of the Buick to Habish.

## STANDARD OF REVIEW

 Summary judgment is appropriate only where there. are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). As entitlement to summary judgment is a question of law, we need give no deference to the trial court's determination of the issues. *Higgins,* 855 P.2d at 235. Additionally, "the interpretation of an unambiguous contract is a question of law which does not require any particular deference to the trial court's interpretation of the contract." *LMV Leasing, Inc. v. Conlin,* 805 P.2d 189, 192 (Utah App.1991).

## ANALYSIS

### Transfer of Title

 Allstate argues that Habish did not own the vehicle at the time of the accident, because title had not yet passed from Wheels to Habish, and therefore Jockey still had the responsibility to insure the car. Relying on a statutory provision from the Motor Vehicle Act, Allstate asserts that the lease agreement between Jockey and Wheels terminated only after title to the Buick passed from Wheels to Habish:

> Until the department shall have issued such new certificate of registration and certificate of ownership, delivery of any vehicle required to be registered shall be deemed not to have been made and *title thereto shall be deemed not to have passed, and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose* except as provided in Section 41–1–77.[1]

Utah Code Ann. § 41–1–72 (1988) (emphasis added).[2] In addition to this statute, Allstate cites as support *State Farm Mutual Insurance Co. v. Holt,* 28 Utah 2d 426, 503 P.2d 1205 (1972). In *Holt,* an employee was purchasing a car from his employer and paying for it with monthly payroll deductions. Although the employee had possession of the car, the employer had retained the title and registration pending full payment for the car. Before the car was paid off, the employee had an accident. The employer's insurance company, State Farm, argued that it was not liable because the employee had effectively purchased the vehicle. Citing section 41–1–72, the Utah Supreme Court held that State Farm was liable because title had not yet been transferred into the employee's name. *Id.* 503 P.2d at 1206.

Although instructive, *Holt* is inapplicable to the present case. First, the relationship in *Holt* between the employer and employee, regarding the car, was that of seller/title holder and purchaser/possessor, respectively. In the present case, that same relationship existed on the date of the accident between Wheels and Habish, not Wheels and Jockey.

---

**1.** The exception provided by § 41–1–77 deals only with liability for negligent operation of a vehicle subsequent to the bona fide sale and transfer of title and is inapplicable to the present case.

**2.** In 1992, the Utah Legislature renumbered Title 41, the Motor Vehicle Act. Section 41–1–72 was not substantively changed but was renumbered as Utah Code Ann. § 41–1a–707 (1993).

Wheels was at all times during the lease the legal and equitable holder of title to the Buick; furthermore, it still held legal title to the Buick at the time of the accident.[3] Habish was, at the time of the accident, the purchaser, possessor, and equitable title holder of the Buick, although legal title had not yet formally been transferred into his name. Jockey, however, neither held title to nor possessed the Buick at the time of the accident. Thus, even accepting Allstate's reading of *Holt*, it requires a result contrary to Allstate's position. *Holt* supports the argument that Wheels, and hence Allstate, was liable on the date of the accident, pursuant to section 41–1–72, because Wheels had not yet transferred title to Habish.[4] *Id.; see also Stewart v. Commerce Ins. Co.*, 114 Utah 278, 198 P.2d 467, 471 (Utah 1948) (holding that decedent's estate retained insurable interest in wrecked automobile, and thus his insurance carrier was liable even though automobile had been sold to third party, because title had not yet passed, pursuant to section 57–3a–72 (section 41–1–72's predecessor)).

Section 41–1–72 is therefore inapplicable to the present case. While passage of title may affect liability as between Wheels and Habish (which question is moot since they are both insured by Allstate), it is not relevant in any way to Jockey's duty to insure the Buick.

### Termination of Lease

Determining when the lease on the Buick terminated is key to resolving this case, because Jockey's duty to insure the Buick was coterminous with the vehicle's lease term. Liberty Mutual argues that at the time of the accident Jockey's lease of the Buick had terminated and therefore Jockey had no insurable interest. Specifically, Liberty Mutual argues that Jockey's surrender of possession of the Buick to Habish on March 11, 1985, coupled with Wheels's delivery to Habish on the same day of the new leased Mercury Marquis, terminated Jockey's lease of the Buick, along with Jockey's corresponding duty to provide insurance on the Buick. On the other hand, while agreeing with Liberty Mutual that the lease terminated when Jockey relinquished "possession" of the Buick, Allstate argues that Jockey continued in "possession" of the Buick until title passed to Habish after the date of the accident and thus the lease was still in effect on the date of the accident.

Allstate's "possession" argument is meritless. First, the dictionary defines "possession" as "the act of having or taking into control; control or occupancy of property without regard to ownership." *Merriam Webster's Collegiate Dictionary* 909 (10th ed. 1993). It is undisputed that Jockey relinquished all control over the Buick on March 11, 1985 when Wheels delivered the new Mercury Marquis to Habish who then retained the Buick for his personal use only. Consequently, Jockey could not possibly have "possessed" the Buick on the date of the accident because it did not control or occupy the Buick, but had relinquished it to Habish with the acquiescence of Wheels. Furthermore, Habish's possession of the Buick was not in his capacity as an employee of Jockey, but rather was personal to him. Second, as noted above, while the passage of title may affect liability as between Wheels and Habish, it does not impact Jockey's duty to insure nor does it determine when "possession" ends.

---

3. According to *Holt*, equitable title passes to the purchaser upon a bona fide sale for value, even though the formal requirements of § 41–1–72 are not complete. *Holt*, 503 P.2d at 1206 n. 1 (citing *Dahl v. Prince*, 119 Utah 556, 560, 230 P.2d 328, 330 (1951)). Consistent with that principle, Habish held equitable title to the Buick on the date of the accident and Wheels held legal title.

4. The Utah Supreme Court stated in *Jackson v. James*, 97 Utah 41, 89 P.2d 235 (1939) that the provisions of § 41–1–72 "are not absolute, mandatory, or controlling in their application. They do not confer or deny substantive rights. They are procedural or evidentiary in nature. They provide a flag of warning to prospective transferees or encumbrancers, much as do the registry acts relative to real estate or chattel mortgages." *Id.* 89 P.2d at 237. Additionally, the *Jackson* court noted that "it is evident that [§ 41–1–72's] provisions were written to protect innocent purchasers and third parties from fraud but [were] not intended to be controlling as between the parties to the transaction." *Id.* Thus, § 41–1–72 is not necessarily dispositive in determining liability as between Wheels or Habish. However, the question is moot because Allstate insured both of them on the date of the accident.

While the parties focus on "possession," and concede that it is critical in determining when the Buick lease terminated, the lease agreement does not make "possession" the touchstone for ascertaining termination of the lease for insurance purposes. Paragraph 11 of the lease agreement, titled *Insurance,* states the following:

> Lessee agrees to assume all liability for injury, death, or property damage occasioned by the operation and possession of the motor vehicle *during the term of the lease* and agrees to indemnify and save harmless, Lessor, against any claim or liability, loss, or expense, including legal expenses caused by or arising out of bodily injury, or death, or damage to property arising out of the possession of the motor vehicle *during the term of this lease* or any renewal thereof.... Lessee further agrees to be liable to the Lessor for damage, loss or destruction of each motor vehicle *during the term of the lease.*

This quoted language clearly indicates that Jockey, the Lessee, is responsible for providing insurance on leased vehicles "during the term of the lease." However, the "term of the lease" is not defined in the lease agreement.[5]

Paragraph 12 of the Lease Agreement, titled *Term of the Lease,* is likewise unhelpful. It merely sets forth the minimum duration of a lease (one year for cars and two years for trucks). This paragraph also states that the Lessee agrees to return the vehicle to the Lessor "upon termination of the lease," but again does not indicate what event triggers termination. The only clear reference to termination of the lease regards billing: "For billing purposes, the effective date of termination of a lease of a motor vehicle, shall be the delivery date of a replacement vehicle, or the date of sale in case of a cancelled unit where no replacement unit is involved." This language regarding billing appears to address avoiding double billing in

the month that a new car is delivered and an old car is surrendered rather than to define termination of the lease for insurance purposes. It is, however, instructive on the issue at hand as it is the only lease provision which specifically defines lease termination, and does so by referring to delivery of a new vehicle to replace a vehicle which is no longer subject to the lease agreement.

Despite the lease agreement's failure to specifically address termination of the lease for insurance purposes, we believe that the undisputed facts in this case, coupled with the language of the lease agreement, establish as a matter of law that Jockey's lease on the Buick had terminated at least as of the time of the accident. The undisputed facts on which we rely are as follows: (1) Wheels delivered the new lease vehicle, a Mercury Marquis, to Habish on March 11, 1985, which he thereafter used exclusively for business purposes; (2) Wheels, Jockey, and Habish had all agreed prior to the accident that Habish could and would purchase the Buick for his personal use; (3) Habish ceased using the Buick for business purposes on March 11, 1985; (4) Habish paid Wheels for the Buick around March 23, 1985, almost two weeks before the automobile accident; (5) after Habish had fully paid for the Buick, and before the accident, Wheels took all necessary steps to have the state issue a new title and registration in Habish's name; (6) Habish requested and received from Allstate on approximately March 28, 1985 an oral binder for insurance on the Buick; (7) Jockey had relinquished all control over the Buick on March 11, 1985 and had not received a bill for or paid any further lease payments on the Buick thereafter; and (8) Jockey's insurance coverage with Liberty Mutual covered only cars in Jockey's fleet of leased vehicles. At the time of the accident, the Buick was not part of Jockey's fleet of leased vehicles used for business purposes and therefore its insurance did not cover it. Accordingly, we hold

---

**5.** We note the "possession" language in paragraph 11 which states that the Lessee will indemnify the Lessor for expenses "caused by or arising out of bodily injury, or death or damage to property *arising out of the possession of the motor vehicle during the term of this lease.* The phrase "possession of the motor vehicle" could imply

that Jockey's duty to insure the leased Buick was coterminous with possession. However, the term "possession" is limited by the phrase "during the term of this lease." Thus, we believe this language is inconclusive and therefore do not rely on it to make our decision.

that there was no error on the part of the trial court in granting summary judgment to Liberty Mutual and ruling that the lease between Wheels and Jockey for the Buick terminated prior to the accident.

## CONCLUSION

Allstate is solely liable for coverage stemming from the automobile accident in this case. The relevant facts, coupled with the language of the lease agreement, establish that Jockey had no insurable interest in the Buick at the time of the accident. Furthermore, the passage of legal title from Wheels to Habish does not control in this instance; if anything, it simply affects whether Wheels or Habish—not Jockey—would be liable, which issue is moot because both Wheels and Habish were insured by Allstate. Therefore, we affirm the trial court's grant of summary judgment in favor of Liberty Mutual and its denial of Allstate's Cross–Motion for Summary Judgment.

BILLINGS and RUSSON, JJ., concur.