HARRISON *v.* HARRISON.

4-5445                                         127 S. W. 2d 270

Opinion delivered April 17, 1939.

R. H. *Peace,* for appellant.

B. *Ball,* J. *Mack Tarpley* and *Aubert Martin,* for appellees.

MEHAFFY, J. On March 5, 1936, appellees instituted this action against the appellant in the Bradley chancery court, asking that a receiver be appointed and that their interest in the lands described be adjudicated.

The complaint alleged that appellee, Mrs. Carrie Harrison, and William Henry Harrison were married in Bradley county in March, 1927, and as a result of this union three children were born. These three children are minors, and, with Mrs. Carrie Harrison, are the appellees herein. William Henry Harrison had been married twice prior to his marriage with appellee. His first wife died and his second wife obtained a divorce. The appellants are children by William Henry Harrison and his first wife. The said William Henry Harrison was the owner of the land described in the complaint. On March 26, 1927, the said William Henry Harrison conveyed by deed the land described in the complaint to Jeppie Harrison, Winnie Castleberry, and Verna Harrison, his children by the first wife. It is alleged that the deed was not in good faith or with intention of passing title, but was made for the purpose of preventing other persons, particularly his former wife, from obtaining an interest therein; that said Harrison at all times after said deed was made retained possession of said lands, farmed same and derived all the benefits therefrom; that after his marriage to appellee, he acknowledged ownership of said lands, and announced his intention of removing the cloud which said deed cast thereon; that at the time of appellee's marriage to said Harrison he claimed to own said land and she never knew that he had made a deed until after his death, which occurred in July, 1935; that the children, appellees, were born after said deed was made. Verna Harrison, one of the grantees in said deed, died prior to the death of his father; that said conveyance was a fraud upon the rights of appellees and should be cancelled and held for naught and that Carrie Harrison should be awarded dower and homestead and that the minor children, appellees, should be given a full three-fifths interest in the described lands; that Jeppie Harrison is assuming ownership and control to the exclusion of appellees; Carrie Harrison has no lands to cultivate

and said Jeppie Harrison is making every effort to exclude her from the use of any of said property.

The appellants filed answer and intervention denying the material allegations in the complaint. They allege that said land was deeded to them in good faith. They admit assuming ownership and admit that Verna Harrison died unmarried, intestate and without issue before the death of William Henry Harrison. Both parties asked for a partition of said lands. A clause in the deed is as follows:

"To have and to hold the same unto the said Jeppie Harrison, Verna Harrison and Winnie Castleberry and unto their heirs and assigns, from and after my death, excepting all timber on said lands as above stated. It is understood that this deed is to take effect and be in force from and after the death of the grantor herein, the grantor to have the use and occupancy of said land to use them as his own, to use and sell timber," etc.

The undisputed evidence shows that the deed was made on March 26, 1927, and was filed for record at 3:40 o'clock on that day, and that William Henry Harrison and Carrie Harrison were married on the night of March 26, 1927. The evidence also shows that the land described was the homestead of William Henry Harrison and appellee, Carrie Harrison, and that she and her minor children still reside on said land. Appellant, Jeppie Harrison, is 38 years old. He learned of the deed about a month after his father's third marriage. He did not pay for the deed. W. H. Harrison lived with his first wife twenty years and they had four children.

There was introduced testimony as to divorce proceedings between W. H. Harrison and his second wife. We deem it unnecessary to set out this testimony. In the first place, the last marriage is presumed to be legal. Then, the testimony of Judge D. L. Purkins, who was attorney for the second wife in the divorce case, and other evidence is ample to sustain the chancellor in his finding: "That the marriage contract by and between W. H. Harrison and Mattie, his second wife, was legally annulled by the Bradley chancery court on the 26th day

of September, 1926, there can be no doubt. The original opinion of the court and the original decree in which judgment for divorce and settlement of property rights are before the court, both instruments bearing the signature of the presiding judge. This decree has been in force and effect since its rendition and may not be defeated because of any misprison of the clerk of the court.''

The evidence was sufficient to show that a divorce had been granted the second wife and the marriage of W. H. Harrison to appellee, Carrie Harrison, was valid.

Appellants' next contention is that the deed to appellants should be held as a valid conveyance. It is true that some of the testimony was incompetent and irrelevant, but the undisputed facts are that the deed was made on the same day of the marriage, but was made a few hours before the marriage; appellee was taken to this land as her home; that she and Harrison occupied the place as a home for nearly ten years and were occupying it as a home at the time of his death, and during the time they occupied the home W. H. Harrison had exclusive control of the land and managed it just as the owner. There is no evidence that she knew anything about the deed until after his death. Their children were born there.

The Chancellor in his opinion stated: ''Regardless of the motive that impelled W. H. Harrison to execute the deed, or Carrie Forest Harrison to contract her marriage, the grantees took no title to the land that would exclude the widow of her dower and homestead, or the children born of the union of their inheritance. To hold otherwise would result in an unconscionable wrong, not only to rights arising under the marital contract, but to the children born of such union.''

The law is well settled in this state that if, shortly before marriage, the future husband conveys away his real estate, without the knowledge of his betrothed, the courts will set aside such conveyance. This court said in the case of *Roberts* v. *Roberts, Admx.*, 131 Ark. 90, 96, 198 S. W. 697: ''In 9 Ruling Case Law, page 591, it was said: 'That the wife's right of dower is a substantial property right, entitled to protection by the courts, is

perhaps most strikingly shown in action by her to set aside conveyances made by the husband for the purpose of defeating her expectation (though not yet vested even as an inchoate right) of dower. If shortly before a marriage, the future husband conveys away his real estate without consideration, and without the consent or knowledge of his betrothed, with the purpose and result of unfairly depriving her of dower, the courts will set aside the conveyance as a fraud upon her rights; and even the fact that it was made for a valuable consideration will not save it, if the grantee participated in the intent to defraud the wife.' Numerous cases are cited which support the text.

"In our recent case of *West* v. *West,* 120 Ark. 500, 179 S. W. 1017, we stated our own views on this subject in the following language: 'This brings us to a consideration of the law governing cases of this character. The general rule is that if a man or woman convey away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance or compel the person taking it to hold the property in trust for or subject to the rights of the defrauded husband or wife. Perry on Trusts and Trustees, (6th Ed.) vol. 1, § 213; Bishop on the Law of Married Women, vol. 2, § 350; *Smith* v. *Smith,* 2 Halstead Ch. (N. J.) 515; *Leach* v. *Duvall,* 8 Bush. (Ky.) 201; *Dearmond* v. *Dearmond,* 10 Ind. 191; *Collins* v. *Collins,* 98 Md. 473, 57 Atl. 597, 103 Am. St. Rep. 408, (1 Ann. Cas. 856) and case note'."

This rule has recently been approved in the case of *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822.

We think the chancellor's decree is supported by a preponderance of the evidence, and it is, therefore, affirmed.