Erie Darnall LAND et al., Petitioner,

v.

Viola Walker MARSHALL, Respondent.

No. B–254.

Supreme Court of Texas.

March 13, 1968.

Rehearing Denied May 1, 1968.

Hassell & Riley, J. W. Hassell, Jr., Dallas, for petitioner.

Elvin E. Tackett, Fort Worth, for respondent.

POPE, Justice.

Viola Walker Marshall, the widow of W. E. Marshall, instituted this suit to set aside a trust created by her husband. Plaintiff asked judgment for the recovery of title and possession to one-half of the corpus of the trust which she alleged was her community property. The corpus consisted of 2,562 shares of stock in the Franklin Life Insurance Company valued at $99,587.75 at the date of the trustor's death. Plaintiff sued Erie Darnall Land who was trustee under the Marshall trust, Erie Land's husband, and Linda Darnall Land. Erie is the plaintiff's and W. E. Marshall's daughter and Linda is their granddaughter. Linda was the ultimate beneficiary of the corpus of the Marshall trust. Each side of this controversy made motions for summary judgment and concedes the absence of any fact questions. The trial court granted defendants' motion for summary judgment, but the court of civil appeals reversed that judgment and awarded plaintiff title to an undivided one-half interest in the shares of stock. 413 S.W.2d 820.

The plaintiff and W. E. Marshall were married in 1905. During the marriage and prior to Marshall's creation of the trust, they accumulated 760 shares of stock in the Franklin Life Insurance Company. Except for a small house and lot and some worthless stock, the Franklin Life stock constituted the entire community estate. On August 23, 1960, W. E. Marshall, without informing his wife, executed a trust instrument and transferred the corporate stock to their daughter, Erie Darnall Land as trustee. The stock certificates were transferred on the books of the company to the name of Erie Darnall Land, Trustee, and were delivered to her. The summary judgment proofs show that plaintiff did not learn of the trust until three weeks before her husband's death on August 4, 1965. She obtained the information from Franklin Life's transfer agent to whom she had made the inquiry. At that time, by reason of stock dividends and stock splits, the trustee held 2,562 shares. After Marshall created the trust, he continued to receive all the dividends as well as the proceeds from shares which the trustee sold upon his instructions. After Marshall's death, plaintiff refused to accept any dividends or profits from the trust. The provisions of the trust instrument are stated in a footnote to the opinion of the court of civil appeals, supra, and we shall not repeat them. The essential features are:

1. Marshall expressly declared he was acting for himself and as manager of the community estate in transferring the stock.

2. The stock was to be owned and held by the trustee for the benefit of Marshall and wife.

3. The trustee was to pay all dividends, interest, and profits arising from the securities to Marshall during his life, and after his death to his wife during her life.

4. The trustee was to follow the instructions of Marshall with reference to the holding, sale, disposition or encumbrance of the stock; also with reference to voting the shares of stock and making her election upon optional proposals.

5. Marshall reserved the power to require the trustee to sell, dispose of, or encumber the stock and to pay to

him the proceeds even though it would extinguish the trust.

6. Marshall reserved the power to require the trustee to pay out of the principal such sum as he might direct at any time, if in his sole judgment the income was insufficient to maintain himself and wife.

7. The trustee could invade the principal of the trust to provide for Marshall and his wife if either should become incompetent by reason of illness or adversity.

8. The Marshall Trust was to terminate after the death of both W. E. Marshall and his wife, whichever occurred later. The trustee was then to deliver the remaining corpus to W. E. Marshall's granddaughter, Linda Darnall, who would take the property absolutely. If Linda Darnall predeceased Marshall and his wife, the corpus of the trust was to go to the living children of Linda Darnall, and if there be no such children, the trustee was to take the property as her own.

9. On August 7, 1961, Marshall amended the trust instrument. The amendment provided that upon the deaths of both W. E. Marshall and wife, the trust corpus was to go absolutely to the trustee, Erie Darnall Land. If the trustee was not then living, the trust corpus vested in Linda Dar-

nall absolutely. If Linda Darnall was not alive at that time, the trustee was directed to deliver in equal shares the remainder of the trust to the living children of Linda Darnall. If there be no such children, the trustee was required to distribute one-half the trust estate to the heirs at law of W. E. Marshall as of that date. The remaining one-half was to go to the heirs at law of Viola Walker Marshall.

The court of civil appeals sustained several contentions advanced by plaintiff for its holding that the Marshall trust was invalid. It held that the trust failed because it was an attempted testamentary disposition of the wife's one-half community interest in the stock, it was an incomplete gift of the stock, it was a constructive fraud practiced by the husband as manager of the community upon the wife's marital rights, and, without so holding, the court suggested that the trust instrument was illusory rather than real. The defendants, on the other hand, urged that the Marshall trust was a community estate, and that Marshall, in the absence of fraud, had the power under article 4619,[1] Vernon's Ann.Tex.Civ. Stats., to control the community property during the marriage. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925). Defendants urged that Marshall, acting under those powers, created an express revocable trust authorized by the Texas Trust Act.[2] We shall discuss each of these contentions.

---

1. Art. 4619 has been amended. See Tex. Rev.Civ.Stat.Ann., art. 4619 (Supp.1967). However, the present case arose when article 4619, § 1 provided:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. During coverture the common property of the husband and

wife may be disposed of by the husband only; * * *."

2. Art. 7425b–7, Vernon's Ann.Tex.Civ. Stat., provides alternative methods of creating an express trust:

"A. A declaration in writing by the owner of the property that he holds it as trustee for another person, or persons, or for himself and another person or persons; or

B. A written transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person or persons; or

The court of civil appeals held that the Marshall Trust failed because Marshall did not have the right to make a testamentary disposition of his wife's community property. This is a correct legal principle. Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402 (1942); Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935); Smith v. Butler, 85 Tex. 126, 19 S.W. 1083 (1892). When one of the spouses undertakes to devise community property belonging to both, the survivor has an election to take under the will or to take the community share. Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670 (1955); Dakan v. Dakan, supra. These principles, however, are not determinative of the problem presented by this case. A valid inter vivos trust is not and does not purport to be a will. The question presented is whether the trust was valid at the time of its creation. If the death of the trustor is a condition precedent to the creation of a trust, the requirements for the execution of a will must be met; if a trust is created during the lifetime of the trustor, even though he reserves the power to revoke, a trust may presently be created. Sections 56–57, Restatement of Law of Trusts 2d (1959); see Reporters Notes, § 57, Appendix, p. 111. Scott, in his article, Trusts and the Statute of Wills, 43 Harv.L.Rev. 521, 528 (1930) points up this difference:

"It is sometimes suggested that a trust created *inter vivos* is invalid if it is made in lieu of a will. Such an objection is almost meaningless. Any trust which is to continue after the death of the settlor must be created either *inter vivos* or by will, and if either form of disposition is employed it is used in lieu of the other.

C. A transfer by will by the owner of property to another person or persons as trustee for a third person or persons; provided that a natural person as trustee may be a beneficiary of any such trust.
D. An appointment by a person having a power of appointment to another person as trustee for the donee of the power or for a third person; or

* * * It would seem, however, that the disposition is not to be condemned merely because the settlor elected to dispose of his property in one way rather than in another. It is not against public policy to uphold a disposition not made by will although other dispositions not very different would be invalid unless so made. * * * Probably all that is really meant is that the disposition must be what it purports to be, that it must be real and not colorable. * * *."

Plaintiff further contended and the intermediate court held that the Marshall trust must fail because it was an incomplete inter vivos gift. The basis of the argument and of the holding of the court of civil appeals is Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975 (1943). In that case it was said:

"While the transactions under review are in the form of voluntary trusts, they are governed in general by the rules applicable to gifts. The principal difference between such a trust and gift lies in the fact that in the case of a gift the thing given passes to the donee, while in the case of a voluntary trust only the equitable or beneficial title passes to the cestui qui [sic] trust. In each case the equitable title must pass immediately and unconditionally and the transfer thereof must be so complete that the donee might maintain an action for the conversion of the property. Absent a completed gift of the equitable title, no trust is created, for an imperfect gift will not be enforced as a trust merely because of its imperfection. A gift cannot be made to take effect in the future, for the reason that

E. A promise by a person to another person whose rights thereunder are to be held in trust for a third person; * * *."
Art. 7425b–41, Vernon's Ann.Tex.Civ. Stat. declares:
"Every trust shall be revocable by the trustor during his lifetime, unless expressly made irrevocable by the terms of the instrument creating the same or by a supplement or amendment thereto."

a promise to give is without consideration. Neither can the donor retain the right to use and enjoy the property during his lifetime and direct its disposition after his death in any manner other than by the making of a will. * * *"

We do not think Fleck v. Baldwin sustains the proposition that a valid inter vivos trust may not be created without conforming to the requirements of a gift inter vivos. First, Fleck v. Baldwin did not involve an application of the Texas Trust Act because the trusts in that case were created before April 19, 1943, the effective date of that act. The Trust Act did not operate retroactively. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471 (1945). The Trust Act allows the creation of a trust even though the trustor is a beneficiary. Art. 7425b–7 (B), Vernon's Ann.Tex.Civ.Stat. Thus, the Texas Trust Act expressly sanctions that which the opinion in Fleck v. Baldwin condemned. Second, by refusing a writ of error in Schmidt v. Schmidt, 261 S.W.2d 892 (Tex.Civ.App.1953, writ ref'd), this court sharply narrowed the opinion in Fleck v. Baldwin to deal only with the questions of agency and gift inter vivos. In Schmidt the court of civil appeals faced the contention that if a transfer of property in trust failed to divest the transferor of beneficial title, the transfer created an agency, not a trust. The contention was partially based on the holding in Fleck v. Baldwin. In distinguishing Fleck v. Baldwin, the court of civil appeals said:

"A careful examination of these authorities fails to support the proposition advanced by appellees. Each of the cited cases involves the question of whether or not certain acts by a principal constituted a 'gift inter vivos' or simply an 'agency.' It is true that in each of the cited cases the court held that no gift was made but in no case does the court support its action upon the broad statement contained in appellees' proposition nor does the court infer such proposition to be a correct statement of the law."

Therefore, we think Schmidt v. Schmidt and the Trust Act recognize the clear conceptual differences between an inter vivos trust and an inter vivos gift. The difference is expressed in 38 C.J.S. Gifts § 8, p. 785:

"There is a clearly defined and well recognized difference between a gift inter vivos and a declaration of trust, and a transaction cannot be both. To make a gift inter vivos the donor must part with the possession and control, and delivery is essential, while in a declaration of trust, or a voluntary trust, the legal title is retained by the donor, or transferred to a third person, and only the equitable or beneficial title vests in the cestui que trust. * * *"

In Cleveland Trust Co. v. White, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 475 (1938) it was said:

"It is often remarked that a gift inter vivos and a voluntary trust are very nearly identical. This is not strictly true. A gift inter vivos bestows on the beneficiary both the legal and equitable title while a trust conveys the equitable title only, the legal title resting in a trustee. (Citing authorities)

"A power of revocation accompanying delivery would make a gift inter vivos a nullity, for dominion and control over the property would thereby be retained by the donor. But, according to the decisions, a settlor who executes an instrument creating a trust may successfully divest himself of title and transfer it to others, though reserving the power of revocation. Burnet, Comm'r of Internal Revenue v. Guggenheim, 288 U.S. 280, 284, 53 S.Ct. 369, 370, 77 L.Ed. 748, 750."

That portion of the court of civil appeals' opinion based upon Fleck v. Baldwin is incorrect. A valid inter vivos trust may be created without compliance with the common law requirements of a gift inter vivos. Baker v. Baker, 123 Md. 32, 90 A. 776 (1914); Slepkow v. McSoley, 54 R.I. 210,

172 A. 328 (1934); Wood v. Wood, 87 Utah 394, 49 P.2d 416 (1935).

■■■ Plaintiffs also urged and the court of civil appeals held that the Marshall trust was beyond the husband's managerial powers over the wife's community estate and amounted to a fraud upon the wife. This too is a correct statement of a general principle, for the husband's fraud upon the wife will defeat the husband's exercise of his managerial powers over the community. Krueger v. Williams, 163 Tex. 545, 359 S. W.2d 48 (1962); Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105, 168 A.L.R. 337 (1946); Martin v. Mc-Allister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585 (1901). Defendants meet the contention by insisting that no fraud was shown by the summary judgment proofs, that an express revocable trust is authorized by the Texas Trust Act, and Marshall could create such a trust in the exercise of his managerial powers. Fraud is not presented for our consideration by the record in this case. The parties agreed that there was no intentional or actual fraud practiced by the husband upon the wife. The intermediate court held, however, that the Marshall trust amounted to a constructive or legal fraud.[3] In our opinion, that species of fraud is also absent from this case. Plaintiff alleged in her petition that "the execution of such Trust Agreement constituted fraud as to this Plaintiff" because it was a gift of the community. The trial court recited in the judgment that the plaintiff in the course of the summary judgment trial withdrew the allegations of fraud. That part of the judgment is not thereafter questioned; therefore, there is no basis upon which the Marshall trust can be invalidated upon the basis of fraud.

■ The central question in this case arises out of an apparent conflict in the law and policy of our community property system. The husband, under Texas law, has managerial powers over the wife's community interest. However, the husband's managerial powers do not extend beyond his death so as to allow the husband to dispose of the wife's community interest by his will. The wife, for that reason, has the right to elect to take under or against her husband's will when he undertakes to dispose of her community share upon his death. Thus, the question is whether the husband can accomplish by inter vivos trust what he could not do by a will. The wife contends that her husband could not control the disposition of her community share by the trust instrument. Conversely, the proponents of the trust point out many situations in which it is sound management by the husband to create an inter vivos trust of the wife's community interest even though its disposition is effected upon his death. We believe the paradox can be resolved by the doctrine of illusory trusts. Under the doctrine, the husband has the power to create an inter vivos trust as a part of his managerial powers over the wife's share; but when her community share is involved, the wife can require the trust to be real rather than illusory, genuine rather than colorable.[4]

■ The Marshall trust was invalid. The trustor transferred the legal title of the

---

3. The distinction between actual and constructive fraud was recently discussed by this court in Archer v. Griffith. 390 S.W. 2d 735 (Tex.Sup.1964). We said at p. 740:

"* * * Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests."

4. "* * * The term 'colorable,' as used herein, indicates a transfer which may be absolute on its face, but which, actually, is not a transfer at all because, through some secret or tacit understanding, the parties intended that ownership is to be retained by the donor. * * *." Edward A. Smith, 44 Mich.L.Rev. 151, 153; Martin v. Martin, 282 Ky. 411, 138 S.W. 2d 509 (1940).

corpus to a trustee, but he retained complete control over the trustee. Marshall had and could exercise every power over the corpus of the trust after the creation of the trust that he possessed before its creation. As expressed by respondent, Marshall created a trust, but nothing happened. Mr. Justice Holmes in Leonard v. Leonard, 181 Mass. 458, 63 N.E. 1068 (1902) expressed the same idea when he said that the transfer took back all that it conveyed except legal title.

The illusory trust concept has evolved from jurisdictions in which the wife is entitled to some share of her husband's estate at his death. The leading case, Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643 (1937) arose under a New York statute which entitled the survivor to elect and take an intestate's share rather than under the terms of the will of the deceased spouse. Three days before the husband died, he created a trust which the surviving wife attacked as invalid. The husband by the trust instrument reserved the income from the corpus during his life and retained the power to revoke the trust as well as the power to control the trustees. The court in striking down the trust said:

"In this case the decedent, as we have said, retained not only the income for life and power to revoke the trust, but also the right to control the trustees. We need not now determine whether such a trust is, for any purpose, a valid present trust. It has been said that, 'where the settlor transfers property in trust and reserves not only * * * a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary. * *.' American Law Institute, Restatement of the Law of Trust, § 57, subd. 2. We do not now consider whether the rule so stated is in accord with the law of this state or whether in this case the reserved power of control is so great that the trustee is in fact 'the agent of the settlor.' We as-

sume, without deciding, that except for the provisions of section 18 of the Decedent Estate Law the trust would be valid. * * * Perhaps 'from the technical point of view such a conveyance does not quite take back all that it gives, but practically it does.' That is enough to render it an unlawful invasion of the expectant interest of the wife. Leonard v. Leonard, supra. * * *

"Judged by the substance, not by the form, the testator's conveyance is illusory, intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed.

*   *   *   *   *   *

"In this case it is clear that the settlor never intended to divest himself of his property. He was unwilling to do so even when death was near."

In 1 Scott on Trusts, § 57.5 (1967), the author expressed this view about the rule of Newman v. Dore:

" * * * The court held * * * that the transfer in trust in this case was illusory. The husband retained substantially the same rights after creating the trust as he had before its creation. The creation of the trust had no other purpose and substantially no other effect than to exclude the wife from her distributive share. The court said that it was unnecessary to determine whether the wife could be excluded by the creation of a trust in which the settlor retained no such complete power of control. * * *."

The defeat of a trust because it is an illusory one has not been previously recognized in Texas, but an analogous question was decided in Crain v. Crain, 17 Tex. 80 (1856) and Epperson v. Mills, 19 Tex. 65 (1857). Those cases interpreted a forced heirship statute no longer present in this state. The statute, article 3263, Hartley's Digest provided that no father or mother could disinherit their children by will, except for reasons specified in the statute. However, after 1840 the statute did not control the inter vivos disposition of property by parents. Yet

in Crain v. Crain, supra, 17 Tex. at p. 93, the court interpreted the statute to mean:

" * * * [T]he rights secured to heirs by the statute were intended to be substantial benefits, not to be evaded by shifts or devices or donations, whether in fact or in form, '* * * such as to allow a man the control and benefits of his property during life, and to pass the property to a particular heir or stranger after his death, to the defeat of the rights which an heir could claim as against the will of the deceased; and which, in fact, are but a will in disguise, without being subjected to the restrictions on dispositions by will. * * *."

Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643 (1937) has been expressly followed by a number of jurisdictions. Smith v. Northern Trust Co., 322 Ill. App. 168, 54 N.E.2d 75 (1944); Ackers v. First National Bank of Topeka, 192 Kan. 319, 387 P.2d 840 (1963); Pengelly's Estate, 374 Pa. 358, 97 A.2d 844 (1953). The same result has been achieved by some courts by condemning the trust as a fraud upon the marital rights of the wife. Harrison v. Harrison, 198 Ark. 64, 127 S.W.2d 270 (1939); Wanstrath v. Kappel, 356 Mo. 210, 201 S.W.2d 327 (1947); Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S.W.2d 611 (1939); Ibey v. Ibey, 93 N.H. 434, 43 A.2d 157 (1945). In our opinion fraud may be a basis for invalidating a trust; however, the failure of an illusory trust need not rest upon proof of an intent to defraud the wife. See Edward Smith, The Present Status of "Illusory" Trusts, 44 Mich.L.Rev. 151, 153 (1945).

The cases that have passed upon the validity of inter vivos trusts which impair the wife's distributive share or other statutory rights in property have produced no all-inclusive rule or test which must be applied. The view has been expressed that the trustor's retention of the power to revoke the trust should, standing alone, make a trust illusory as to the wife. 60 Mich.L.Rev. 1197, 1200 (1962). Newman v. Dore was a trust in which the trustor retained the in-

come, the right to revoke, and the power of control over the trustee. It did not, however, require proof of fraud upon the wife's marital rights. The opinion expressly avoids the formulation of a fixed test for defining an illusory trust, but instead, states a general and flexible test which is more adaptable to varied situations. The test may be stated, "Did the decedent, by the conveyance in his lifetime, retain such a large interest in the property that, at least as to his wife, his inter vivos trust was illusory?" See Edward Smith, 44 Mich.L.Rev. 151, 155 (1945). This test, in our opinion, harmonizes the husband's managerial powers, the policy of the law to protect the wife's share in the community and the Texas Trust Act.

Defendants argue that the trust is valid even though Marshall reserved power of revocation, right to consume the principal, control of the trustee and other beneficial interests during his lifetime. The argument is based upon cases dealing with the separate or cumulative effect of one or more of these retained rights. Keck v. McKinstry, 206 Iowa 1121, 221 N.W. 851 (1928); Cleveland Trust Co. v. White, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 475 (1938); Talbot v. Talbot, 32 R.I. 72, 78 A. 535 (1911); Koppelkam v. First Wisconsin Trust Co., 240 Wis. 254, 3 N.W.2d 350 (1942). For example, in Cleveland Trust Co. v. White, the question was whether the trustor retained such dominion over the trust property and control of the trustee as to constitute an agency rather than a trust. The court held that an otherwise valid trust is not rendered invalid because the trustor reserves income for life, supervision of investments, right to amend or revoke the trust, and the right to consume the principal. See also, § 57, Restatement of the Law of Trusts 2d (1957); Annot., 118 A.L.R. 481 (1939). The rule expressed in Cleveland Trust Co. v. White and the other cases relied upon by the defendants is not determinative in this case. In the present case, we deal with a problem created by our community property protection of the wife's distributive share, a factor not present in the cases defendants

rely upon. The scheme of our community property law brings additional policy considerations to bear. The difference was recognized in Scott, Trusts and the Statute of Wills, 43 Harv.L.Rev. 521, 537 (1930). After discussing cases illustrative of the rule relied upon by the defendants, the author says:

"Thus far it has been assumed that the settlor had power to dispose of the property by will. Suppose, however, that he has not this power. By statute in many states, if a married person dies, the surviving spouse is entitled to a distributive share of the estate of the deceased spouse of which he or she cannot be deprived by the will of the decedent. The question has arisen in several cases whether the surviving spouse is entitled to a distributive share in property transferred by the decedent inter vivos upon trust for the decedent for life and on his death for a designated beneficiary. If the trust is irrevocable, it is settled that the surviving spouse is not entitled to a distributive share. The same result has been reached, however, where the trust is revocable. It would seem that even though such a disposition is not so far testamentary as to be invalid under the Statute of Wills it might well be held to be so far testamentary as not to bar the surviving spouse; it might well be argued that it is against the policy of the statute to allow the decedent to have the practical advantages of entire ownership as long as he lives and yet to deprive the surviving spouse of a distributive share."

■ We hold, under the summary judgment proofs in this case, that plaintiff is entitled to recover an undivided one-half interest in the Franklin Life stock as well as one-half of the dividends received since Mr. Marshall's death. The validity of the entire trust was placed in issue by the plaintiff's petition, defendants' answer, and the motions for summary judgment; and it is our opinion that the entire trust failed. The trust instrument discloses that the trustor intended that his daughter and granddaughter would be the ultimate owners of the stock after his wife had enjoyed the benefits of the trust during her lifetime as administered by the trustee. The invalidity of the trust as to one-half of the corpus in our opinion disrupted his whole scheme and plan for the trust and its administration, and was beyond the trustor's contemplation.

The trial court rendered judgment that plaintiff take nothing. The opinion of the intermediate court held that the trial court's judgment should be reversed but it expressly reserved judgment upon the validity of the other one-half of the property included in the Marshall trust. We have examined the judgment of the intermediate court and find that it does not conform to the opinion. It correctly reversed the judgment of the trial court, but it did not render judgment for the plaintiff. It merely rendered judgment that defendant take nothing, and it reserved judgment concerning one-half of the Marshall trust.

We affirm that part of the intermediate court's judgment which reversed the take-nothing judgment against the plaintiff. We reform those parts of the intermediate court's judgment which reserved judgment and which rendered judgment that defendants take nothing. We render judgment that the Marshall trust is wholly invalid and that plaintiff recover one-half of the corporate stock.

## On Rehearing

Petitioners argue in their motion for rehearing that portions of our original opinion need some factual clarification. While we think the opinion already states the operative facts, we shall express them again. Viola Walker Marshall did not join in the trust instrument and did not know about it until after her husband's death. W. E. Marshall, her husband, included her community property in the trust. The doctrine of illusory trust is an appropriate rule by which a trust which includes a wife's community property may be tested.

The motion for rehearing is overruled.