**Maurice WESTERFELD et al., Appellants,**

**v.**

**Arthur L. HUCKABY, Appellee.**

**No. 15704.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 17, 1970.

Rehearing Denied Jan. 7, 1971.

Eugene Chambers, Sam L. Sterrett, Houston, for appellants; Robert L. Smith, Houston, of counsel.

J. Edwin Smith, Houston, for appellee.

COLEMAN, Justice.

This is a suit to set aside certain instruments affecting the title to real estate purporting to create a trust in favor of Arthur L. Huckaby, appellee. The case was tried to the court without a jury.

Maurice Westerfeld is the temporary administrator of the Estate of Virginia B. Miller, Deceased, and J. T. Randle is a person interested in that estate. They filed suit to set aside two instruments whereby Virginia B. Miller, a single woman, acknowledged that she held certain real estate, described as a parcel of land located in Houston, Texas, being Lots 4 and 5, Block 18 of the Castanine Addition to the City of Houston, South Side of Buffalo Bayou, in trust for the use and benefit of Arthur L. Huckaby, and to set aside two quitclaim deeds by which Miss Miller attempted to convey the two lots to herself as trustee.

The trust instruments contain the following provisions:

"NOW, THEREFORE, know all men by these presents, that I do hereby acknowledge that I hold and will hold said real property and all right, title and interest in and to said property and all furniture, fixtures and real and personal property therein, In Trust

"1. For the use and benefit of Arthur L. Huckaby—whose address is 1717 Dowling Street Houston, Harris County, Texas.

"Upon my death, my Successor Trustee is hereby directed fortwith to transfer said property and all right, title and interest in and to said property unto the beneficiary absolutely and terminate this trust.

"2. I reserve unto myself the power and right (1) to place a mortgage or other lien upon the property, (2) to collect any rental or other income which may accrue from the trust property and, in my sole discretion as trustee, either to accumulate such income as an addition to the trust assets being held or pay such income to myself as an individual.

"3. I reserve unto myself the power and right at any time during my lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of the beneficiary and without giving notice to the beneficiary. The sale or other disposition by me of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

"4. The death during my lifetime, or the beneficiary designated hereunder shall revoke such designation; I reserve the right to designate a new beneficiary. Should I for any reason fail to designate such new beneficiary, this trust shall terminate upon my death and the trust property shall revert to my estate.

"5. In the event of my death or legal incapacity, I hereby nominate and appoint as SUCCESSOR TRUSTEE: Arthur L. Huckaby—1717 Dowling Street Houston Harris County, Texas to be Successor Trustee.

"6. This Declaration of Trust shall extend to and be binding upon the heirs, executors, administrators and assigns of the undersigned and upon the Successors to the Trustee."

Appellants contend that the instruments are invalid and ineffective because

(1) they are testamentary in character and do not comply with the law of wills;

(2) even if a trust was created it is illusory and void;

(3) the instruments resulted in the creation, at most, of an agency revoked by the death of Virginia B. Miller;

(4) the instruments were revoked by Virginia B. Miller.

In Land v. Marshall, 426 S.W.2d 841 (Tex.1968), the Supreme Court stated the test for determining whether a particular instrument is a valid trust. The court said:

"A valid inter vivos trust is not and does not purport to be a will. The question presented is whether the trust was valid at the time of its creation. If the death of the trustor is a condition precedent to the creation of a trust, the requirements for the execution of a will must be met; if a trust is created during the lifetime of the trustor, even though he reserves the power to revoke, a trust may presently be created." 426 S.W.2d, at 844.

■ These trusts were created and fully effective during the lifetime of the trustor. The reservation of a power to revoke, and the beneficial interest for life in the trust property, will not transform a valid inter vivos trust into an attempted but ineffectual testamentary transfer. Bogert, Trusts and Trustees, 2nd Ed., Sec. 104, p. 536 et seq.

■ The contention that the instruments executed by Miss Miller created no more than a mere agency in Huckaby, and that this agency relationship terminated on her death, cannot be sustained. The Supreme Court encountered a similar argument in Land v. Marshall, but clearly distinguished and limited the leading case in Texas on that point, Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975 (1943, opinion adopted). Among other things, Fleck v. Baldwin was decided before the Texas Trust Act was enacted, and the Trust Act specifically sanctions that which the opinion in Fleck v. Baldwin condemned, i. e., an inter vivos trust with retained powers of control. Further, the Supreme Court noted that by refusing a writ of error in Schmidt v. Schmidt, 261 S.W.2d 892 (Tex.Civ.App.—Galveston 1953, writ ref'd), the Fleck case was severely limited and distinguished. The instant case does not involve a mere agency relationship.

■ The major challenge to the instruments executed by Miss Miller is that they are illusory trusts, and consequently void. The test for determining whether a trust is illusory, as stated in Land v. Marshall, is "Did the decedent, by the conveyance in his lifetime, retain such a large interest in the property that, at least as to his wife, his inter vivos trust was illusory?" 426 S.W.2d, at 848. The test is intentionally "general and flexible," in the words of the Supreme Court, to be more adaptable to varied situations.

The doctrine of illusory trusts in its inception and in its application applies only to marital property situations. The entire tenor of the opinion in Land v. Marshall is couched in terms of community property rights. The illusory trust doctrine was adopted by the Supreme Court to "resolve the paradox" between the husband's rights to manage the community property and the wife's rights to her community share. The court specifically states that "[I]n the

present case, we deal with a problem created by our community property protection of the wife's distributive share. * * * The scheme of our community property law brings additional policy considerations to bear." 426 S.W.2d, at 848–849. See: Johanson, Revocable Trusts and The Community Property; The Substantive Problems, 47 Tex.L.Rev. 537, 544 (1969) where the author states: "The decision [Land v. Marshall], however, relates only to settlements of community property by revocable trust, and the Land case is not authority for the proposition that *any* [emphasis original] revocable trust in which broad controls are retained will be held to be an ineffectual transfer."

Further, in Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643 (1937), the case the Supreme Court particularly relied upon in adopting the doctrine of illusory trusts, the New York Court of Appeals stated:

"We assume, without deciding, that except for the provisions of section 18 of the Decedent Estate Law [giving the surviving spouse a right of election to take his or her share of the estate as in intestacy] the trust would be valid." 9 N.E.2d, at 969.

Other commentators restrict the doctrine to marital property situations. "Since the doctrine of illusory trusts is predicated upon the marital property rationale, it may be asserted only by the widow or widower who has been deprived of a marital interest." Comment, The Illusory Trust and Community Property, A New Twist to An Old Tale, 22 S.W.L.J. 447, 450 (1968). Similarly, in Brorby, Pitfalls in Drafting The Revocable Trust in Texas, 31 Tex.B.J. 479 (1968), the author states: "[w]here the interest of a wife is not involved, the general rule in other jurisdictions is that a revocable trust is not illusory or invalid even though the grantor retains complete control of the trust. * * *" at 565.

The great weight of authority supports the position that the doctrine of illusory trusts does not apply to a situation where there is no question of community property, marital property, or forced heirship, involved.

The view that the doctrine of illusory trusts is inapplicable to the present case is supported by the decision of the Supreme Court in Land v. Marshall. The court found that the widow was entitled to recover her community share of the corpus of the trust. The court then held the entire trust invalid because "The invalidity of the trust as to one-half of the corpus in our opinion disrupted his whole scheme and plan for the trust and its administration, and was beyond the trustor's contemplation." Land v. Marshall, supra, 426 S. W.2d p. 849.

The Texas Trust Act specifically authorizes the creation of a trust by the trustor declaring in writing that he holds the property as trustee for another person (Art. 7425b–7, subd. A, Vernon's Ann.Civ.St.). Further, all trusts created under the Act are specifically made revocable unless otherwise made irrevocable. (Art. 7425b–41, V.A.C.S.). On the question of retained controls over the corpus of the trust, there is little authority in Texas beyond Land v. Marshall. However, the Restatement (Second) of Trusts § 57 comment h (1959), and 1 Scott on Trusts § 57.2 (1967) support the view as expressed by Scott: "The trend of modern authorities is to uphold an inter vivos trust no matter how extensive may be the powers over the administration of the trust reserved by the settlor," at p. 485. Both of these authorities are cited and relied upon by the court in the Land case. Appellants' attack on the validity of the trust cannot be sustained. Investors Stock Fund, Inc. v. Roberts, D.C., 179 F.Supp. 185, aff'd Roberts v. Roberts, 286 F.2d 847 (9th Cir. 1961); Anno.: Trust—Nontestamentary Instrument, 32 A.L.R.2d 1270.

The trusts were not revoked by Miss Miller before her death. The letter relied upon by appellants to support this conten-

tion is no more than a revocation of agency. There is no hint in the letter of any revocation of the trusts. Further, the trial was to the court without a jury, and no findings of fact or conclusions of law were requested or filed. The issue of revocation is presumed to have been found against appellants.

The judgment is affirmed.