The FROST NATIONAL BANK OF SAN ANTONIO, Executor of the Will and Estate of Max Stool, et al., Appellants,

v.

Michael STOOL et al., Appellees.

No. 8156.

Court of Civil Appeals of Texas, Beaumont.

Nov. 22, 1978.

Rehearing Denied Dec. 21, 1978.

Robert P. Thomas, San Antonio, for appellants.

St. John Garwood, Jr., Houston, for appellees.

CLAYTON, Justice.

Plaintiffs filed this suit for a declaratory judgment pursuant to *Tex.Rev.Civ.Stat. Ann. art. 2524–1* (Vernon 1965) seeking a judgment declaring their ownership of three trust accounts "standing on the books of . . . the Del Rio First Savings & Loan Association . . . in the names of 'Max Stool, Trustee for Michael Stool,' 'Max Stool, Trustee for Louis Allen Stool,' and 'Max Stool, Trustee for Gerald Harris Stool,'" naming as defendants The Frost National Bank of San Antonio, Independent Executor of the Will and Estate of Max Stool, Deceased, and Fannie W. Stool, Independent Executrix of the Estate of Joseph A. Stool, deceased.

The case was tried without a jury, and the trial court made and filed findings of fact and conclusions of law. Judgment was entered to the effect that Max Stool created valid trusts of which plaintiffs were the beneficiaries, that the money transferred to the three accounts constituted the corpus of each respective trust, and that upon the death of Max Stool the three trusts terminated and the plaintiffs became the owners of the property in controversy.

Appellants attack the findings and conclusions of the trial court by appropriate no evidence and insufficient evidence points. It is well settled that the trial court's findings carry the same weight as jury findings by which we are bound, if such findings are supported by probative evidence. In a non-jury case, the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *Great American Insurance Co. v. Murray*, 437 S.W.2d 264 (Tex.1969); *Central National Bank v. Booher*, 557 S.W.2d 563 (Tex.Civ. App.—Beaumont 1977, writ ref'd n. r. e.); *Johnson v. Lane*, 524 S.W.2d 361, 363 (Tex. Civ.App.—Dallas 1975, no writ).

Appellants argue the record in this case "does not reveal evidence, or sufficient evi-

dence, necessary to support the trial court's finding that Max Stool intended to create presently operative trusts."

Prior to the creation of the three "trust accounts" made the basis of this suit, Max Stool had an individual account at the savings association, numbered 3835, which was opened in 1966. Max Stool made a deposit to that account on August 3, 1967, and such deposit resulted in a balance of $42,000 in account number 3835. The first entry of each of the three "trustee accounts" involved in this case is dated August 4, 1967, at which time the sum of $14,000 was transferred to each account.

The record does not clearly reveal the details surrounding the opening or funding of the accounts. Appellee, Michael Stool, testified that he went to the savings association where he was given some "instruments that he [the president of the association] prepared for myself and my two brothers out of my grandfather's [account] —involving my grandfather as trustee and truster [sic]." He further testified that he took the documents [three account signature cards] to Max Stool and that he left the house a short time later with the cards, at which time "they were signed 'M. Stool.'" The cards were then taken back to the association.

The treasurer of the association testified that Michael Stool came to the association around August 4, 1969, and "requested that he be given the necessary documents to take out to his grandfather for his signature. . . ." She testified that the accounts were to be "trust accounts"; that the association did not have a supply of form "trust account" signature cards; and that a joint account form signature card was adapted in this instance as a "trust account" signature card. She testified further that Michael Stool "brought in the cards with the request that this be done at his grandfather's instructions"—referring to the instructions that the $42,000 was to be transferred from Max Stool's account to the three new accounts.

The president of the association testified that Michael Stool came to the savings asso-

ciation and told him that Max Stool wanted his individual account divided among the three grandchildren.

Following the opening of the three "trust accounts," Max Stool did not make any additional deposits and made no withdrawals.

The property represented by these three accounts was not specifically devised by the terms of Max Stool's will.

Max Stool's accountant testified that, in 1962, Max Stool made a gift of $73,000 to the children of his daughter, and, in 1965 or 1966, Max Stool gave $60,000 in securities to the children of his other son. He further testified that in July 1967 Max Stool said to him, "I gave gifts to the other grandchildren, and I've got to give these children [in reference to the appellees] something." Later, in December 1967, Max Stool told him that he (Max) had given money to "William's children [appellees]."

Appellants argue that, in view of the evidence in this record, it is not shown that Max Stool intended to create a presently operative trust and, in support of such argument, cite *Fleck v. Baldwin*, 141 Tex. 340, 172 S.W.2d 975 (1943), and *Land v. Marshall*, 426 S.W.2d 841 (Tex.1968). In the *Fleck* case, our Supreme Court held that a trust is not created simply by depositing or by using the words "in trust," but that intent to pass equitable title must be shown. Intent is shown by a consideration of the relevant acts and declarations of the trustor-grantor. In the case of a savings account trust, the court required that the declarant show intent by a larger number of acts than in the case of an ordinary trust. The trust in the *Fleck* case was held invalid because there was no passing of equitable title and the trustor never intended that equitable title pass. The court referred to Mrs. Baldwin as a widow "in a constant state of indecision as to the method of disposing of . . . [her property]" who never parted with her right to exercise dominion and control over any part of the savings accounts, but that she retained and exercised full authority to use and dispose of it as she willed. She actually made numerous additional deposits and with-

drawals from the accounts. Moreover, Mrs. Baldwin's sisters never learned of the trusts until after Mrs. Baldwin's death; this fact was emphasized in holding that Mrs. Baldwin's intention was not to create a trust. The record in our case shows that the beneficiaries under the trust knew of the trust, and after the trust accounts were opened, Max Stool never made any additional deposits or withdrawals from the trust accounts.

The *Fleck* case holds that a valid inter vivos trust could not be created without compliance with the common law requirements of a gift inter vivos. However, in *Land v. Marshall, supra,* the court said that the Texas Trust Act "expressly sanctions that which the opinion in *Fleck v. Baldwin* condemned" and that a valid inter vivos trust may be created without compliance with the common law requirements of a gift inter vivos. The necessity of proving intent to create a presently operative trust has not been abandoned by the cases cited by appellants.

We must review the evidence in its entirety, in the most favorable light in support of the findings made by the trial court and consider only the evidence and inferences which support such findings. *Lucas v. Hartford Accident & Indemnity Co.,* 552 S.W.2d 796 (Tex.1977); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). Upon a review of the record in accordance with such standard of review, we conclude the evidence is factually sufficient to support the findings of the trial court that Max Stool intended to and did create a valid trust in the three trust accounts of which appellees were the beneficiaries, that the money, and all accumulated dividends and interest, was the corpus of such trusts, and that the appellees became the owners of the trust accounts on the death of the trustor, Max Stool.

The judgment of the trial court is affirmed.

AFFIRMED.