Inez EFIRD *v.* Hallie EFIRD, Et Al.

CA 89-253                                        791 S.W.2d 713

Court of Appeals of Arkansas
Division II
Opinion delivered June 20, 1990

*Fenton Stanley*, for appellant.

*Chris E. Williams*, for appellees.

MELVIN MAYFIELD, Judge. On November 10, 1987, Inez

Efird filed suit against her husband, Hallie Efird, and his children by a previous marriage, Melvin Efird and Sandra Jean Mills. In her complaint Inez alleged that in December of 1973 her husband had conveyed certain real property in Malvern, Arkansas, to his two children without her knowledge in a fraudulent attempt to deny her rights to the property. She asked that the deeds be set aside and canceled.

After answers were filed by Hallie, his children and their spouses, who were also made parties, the case came on for trial in November of 1988. The chancellor held that Inez had failed to prove the allegations of her complaint, and it was dismissed. Inez has now appealed to this court.

It is undisputed that on December 27, 1973, Hallie Efird, accompanied by the appellant, obtained a marriage license. Later that day, Hallie executed a warranty deed for no money consideration conveying four lots in Malvern to the appellees Melvin Efird and Sandra Mills, reserving a life estate to himself. On December 28, 1973, Hallie Efird executed a quitclaim deed to the same property to his children, in consideration of the sum of $1.00, for the purpose of correcting the December 27 deed, again reserving a life estate to himself. Then on December 29, 1973, appellant and Mr. Efird were married in the home he had built on the property conveyed to his children.

Appellant and Hallie lived in the home together until 1986 when he went to a nursing home and appellant remained in the home alone. Hallie Efird died on March 8, 1989, before the record on appeal was filed, and the trial court ordered that the case not abate but proceed by the surviving parties in accordance with Ark. R. Civ. P. 25(a)(4).

The appellant, Inez Efird, testified at trial that before she and Hallie were married he told her he was going to build them a house. It was built on his property and finished before they got married. Appellant testified that she helped pick out the paneling, curtains, and plan the kitchen. She testified that Hallie got a loan from a bank in Malvern on which he made payments of $81.00 per month, and the payments continued after their marriage. She said she knew nothing about the deeds to Hallie's children when the marriage took place.

In September 1986, Hallie was seriously burned. Appellant testified that when he began to recover, she asked him if she would have a place to live if something happened to him, and he said, "No, you'll have to get on welfare, or your son'll have to take care of you." She said he did not tell her why, but later, when he went to the nursing home and she was trying to get him on Medicaid, she went to the courthouse and found out what he had done. Her name was not on anything, and she realized for the first time that he made the deeds to the house the same day they applied for their marriage license. She testified that she just wants a place to live; she has lived in the house for fifteen years; and she feels like it is her home.

Appellee Melvin Efird testified he knew about the deeds his father made; that he was aware his father was going to transfer the property before he married Inez; that his father told him that because of his other marriage, it was his intention to leave his property to Melvin and his sister; and Melvin felt that before his father got married he took care of things just exactly the way he wanted. He said his father said he did not want anyone other than his children to have his property, but as far as he knew, it was after his father was burned that his father told Inez about the December 1973 deed.

Appellant argues that the trial court erred in ruling she was not entitled to have the deeds to the homeplace set aside, canceled, reformed or modified, or to have the grantees hold the property in trust to protect her rights. She argues that the deeds, if left standing, would deprive her of that which an intended wife is reasonably and lawfully expected to receive by reason of marriage.

In *West* v. *West*, 120 Ark. 500, 179 S.W. 1017 (1915), the Arkansas Supreme Court set out the following general rule:

> The general rule is that if a man or woman convey away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance or compel the person taking it to hold the property in trust for or subject to the rights of the defrauded husband or wife.

120 Ark. at 504. In that case, however, the court reversed the trial

court's setting aside of a deed from J.L. West to his children by a prior marriage because, unlike the instant case, there was no evidence from which it could be inferred that Mr. West contemplated marriage to the appellee at the time he deeded his property away.

In *Roberts* v. *Roberts*, 131 Ark. 90, 198 S.W. 697 (1917), the widow of Thomas Roberts filed suit to set aside a deed her husband had executed on the day before their marriage. The deed conveyed property without consideration, or without adequate consideration, to a young man that Thomas had reared but had not legally adopted. The chancellor found against the appellant. Our supreme court stated there was no intimation of undue or improper influence over Mr. Roberts to induce execution of the deed, but it was a deliberate act prompted by affection for the boy he had reared. After quoting the language we set out above from *West* v. *West*, the court said:

> Applying the doctrine of that case to the facts of this, we have concluded that the chancellor's finding is contrary to the preponderance of the evidence, and that the deed in question was executed for a grossly inadequate consideration and for the purpose of defeating the dower right which otherwise appellant would have had.

131 Ark. at 96.

The *West* rule was again followed in *Harrison* v. *Harrison*, 198 Ark. 64, 127 S.W.2d 270 (1939). There the appellee and William Harrison were married in March 1927. William had been married twice before. On March 26, 1927, a few hours prior to his marriage to the appellee, he conveyed by deed certain of his property to his children by his first wife. The appellee and William then occupied the place as a home for nearly ten years; she and William were occupying the place as a home at the time of his death; during the time they occupied the home, he had exclusive control of the land and managed it as the owner; and there was no evidence the appellee knew anything about the deed until after William's death. The chancellor held the appellants, who were the children of William and his first wife, took no title to the land "that would exclude the widow of her dower and homestead," and the Arkansas Supreme Court affirmed citing

*West* v. *West* and *Roberts* v. *Roberts*. The court in *Harrison* said:

> The law is well settled in this state that if, shortly before marriage, the future husband conveys away his real estate, without the knowledge of his betrothed, the courts will set aside such conveyance.

198 Ark. at 67.

Likewise, in *Wilhite* v. *Wilhite*, 242 Ark. 705, 415 S.W.2d 44 (1967), the line of cases resulting from *West* was again followed. There Fred Wilhite executed a deed on April 24, 1944, to the appellees, his children by a former marriage. On May 4, 1944, Mr. Wilhite married the appellant and they lived on the land until his death, after which appellant remained until the house burned down. The appellees asked for a declaratory judgment holding that appellant had no interest in the property, and the trial court granted that request. On appeal, our supreme court reversed holding appellant was defrauded of her marital right by her husband. The court, citing *West* and *Harrison*, stated:

> There can be no doubt that the rule announced should apply in this case. Not only did Mr. Wilhite fail to tell appellant he had deeded away the property ten days before they were married, but he apparently misled her into thinking otherwise before and after the marriage.

242 Ark. at 707.

The appellees say that the burden of proof is on the party alleging a fraudulent conveyance, and that fraud must be proved by clear and convincing evidence. It is true that our cases have said this. *See Clay* v. *Brand*, 236 Ark. 236, 365 S.W.2d 256 (1963). In that case the court also stated that two rules of law with respect to proof of fraud had been developed with reference to written instruments. One, the ordinary rule which requires proof of fraud by a preponderance of the evidence and, two, the stricter rule which requires proof of fraud by a preponderance of the evidence which is clear and convincing. The court said the "clear and convincing" language stemmed from the line of cases which require clear and convincing proof to cancel or reform a solemn writing because of fraud, accident, or mutual mistake. However,

regardless of the standard of proof required, we think the chancellor's failure to set aside the deeds from Hallie Efird to his children by a former marriage is clearly erroneous.

It is undisputed that Hallie Efird deeded the property away on the very day he and appellant applied for a marriage license; two days later they married and lived together on the property until he entered a nursing home thirteen years later; the first time appellant knew of the December 1973 deed was when Mr. Efird was seriously burned in 1986. No one disputes the statement in Hallie's deed of December 27, 1973, that: "There was no money consideration herein." Moreover, Melvin Efird testified his father told him it was his intention to leave his property to Melvin and his sister; and that his father did not want anyone other than his children to have his property. These facts bring this case squarely within the rule of *West* and the cases which have followed that decision. Apparently, *West* and its progeny were based upon constructive fraud. In *Lane* v. *Rachel*, 239 Ark. 400, 389 S.W.2d 621 (1965), the Arkansas Supreme Court found constructive fraud and reversed the trial court's decision. Constructive fraud was said to be "a breach of legal or equitable duty" and that "neither actual dishonesty of purpose nor intent to deceive" was an essential element of such fraud. *See also Davis* v. *Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987), where the court said, "[w]e have many times held that there may be a constructive fraud even in the complete absence of any moral wrong or evil intention." 291 Ark. at 476.

The record reflects that at the conclusion of the appellant's case in chief, the appellees' moved to conform the pleadings to the appellant's testimony that "I do not seek nothing more than a life estate, what Hallie Efird had in the said property." The motion was granted by the court and appellant does not argue on appeal that this should not be the limit of her recovery.

On appeal, chancery cases are tried de novo and the usual practice is to end the controversy by final judgment in the appellate court or reverse with directions for the chancellor to enter a final decree. *Wilborn* v. *Elston*, 209 Ark. 670, 191 S.W.2d 961 (1946); *Fish* v. *Bush*, 253 Ark. 27, 484 S.W.2d 525 (1972).

Based on the law discussed above and the undisputed facts in evidence, we reverse and remand for entry of judgment, consis-

tent with this opinion, granting the recovery as limited by the trial court's action noted above.

JENNINGS and ROGERS, JJ., agree.